In re Robert E. CASSE, Debtor.

Bankruptcy No. 197–20411–353.

United States Bankruptcy Court,
E.D. New York.

April 21, 1998.

Law Offices of Stuart Jay Young, by Stuart Jay Young, Rego Park, NY; Law Offices of George Poulos, by George Poulos, Astoria, NY, for the debtor.

Shapiro & DiCaro, L.L.P., by Ann E. Miller–Hulbert, Gerry Careccia Leonti, New York City, for the creditor.

Stuart P. Gelberg, Garden City, NY, Chapter 13 Trustee.

### DECISION ON MOTION TO VACATE FORECLOSURE SALE

JEROME FELLER, Bankruptcy Judge.

### I. INTRODUCTION

This matter arises on motion of Robert E. Casse ("Debtor") to set aside the foreclosure sale of his home. The Debtor asserts that the sale—held September 19, 1997, two days after he filed a petition for relief under Chapter 13 of the Bankruptcy Code on September 17, 1997—violated the automatic stay imposed by 11 U.S.C. § 362(a). Opposing the motion, Key Bank National Association ("Key Bank"), the foreclosing creditor, asserts that the present bankruptcy case is void *ab initio*. Key Bank argues that the filing violates an order of this Court ("Order"), which was entered two months earlier, dismissing "with prejudice" a joint Chapter 11 case filed by the Debtor and his wife, Carol J. Casse (collectively, the "Debtors").

The Debtor contends that Key Bank proceeded with the post-petition foreclosure sale in erroneous reliance upon the Order. He questions the very legitimacy of the Order's imposition of prejudicial relief, and further argues that the Order is fatally flawed. Even assuming the Order's validity—so the argument goes—the bar to refiling is limited to Chapter 11 petitions. Therefore, according to the Debtor, the commencement of this Chapter 13 case was a valid bankruptcy filing, rendering the post-petition foreclosure sale void because it was conducted in violation of the automatic stay.

This Debtor is a good customer of the bankruptcy system and quite familiar to this Court. The instant bankruptcy case is the fourth filed by the Debtor in an effort to stave off foreclosure of his home. The three prior cases, all Chapter 11 cases, were marked by the Debtors' inability or unwillingness to make post-petition mortgage payments, failure to comply with basic statutory obligations, and insurmountable legal impediments to plan confirmation. A reorganization plan was never filed during any of these cases. By the time of dismissal of the third Chapter 11 case, if not earlier, it became abundantly clear that the Debtors were impermissibly employing the Bankruptcy Code in repeated futile bankruptcy reorganization efforts solely to thwart Key Bank from exercising its legitimate contractual and state law foreclosure remedies. To prevent recurrence of this abuse, the Court dismissed the Debtors' third Chapter 11 case "with prejudice." Two months later, on the eve of the third scheduled foreclosure sale of the Property, the Debtor filed the instant bankruptcy case, which forwards an illegal Chapter 13 plan.

For the reasons more fully set forth below, the Debtor's Chapter 13 filing made in violation of the Order is a nullity. The Order was proper and effective to carry out its intended purpose of allowing completion of the foreclosure sale by Key Bank unimpeded by further bankruptcy filings of the Debtor under any provision of the Bankruptcy Code. Accordingly, the Debtor's motion to set aside Key Bank's post-petition foreclosure sale is denied and this Chapter 13 case is dismissed. The Court, however, reserves jurisdiction to determine the Chapter 13 Trustee's motion to impose sanctions for the Chapter 13 filing. This opinion constitutes the Court's findings of fact and conclusions of law in accordance

with Rule 7052 of the Federal Rules of Bankruptcy Procedure, made applicable to this contested matter by Rule 9014.

## II. FACTUAL CONTEXT

### A. *The First Chapter 11 Filing*

In September 1988, the Debtors obtained a mortgage loan of approximately $170,000.00 to purchase a home at 64–24 Austin Street, Rego Park, New York (the "Property"). A little more than a year later, they defaulted on the loan. Key Bank, assignee of the mortgage loan, instituted state court foreclosure proceedings in or around April 1990. The foreclosure action was stayed upon the filing by the Debtors of their first Chapter 11 case on August 29, 1991.

The Debtors languished in Chapter 11 for nearly two years until conversion of the reorganization case to Chapter 7. During that twenty-three month span, only four operating reports were filed. The Debtors' period of exclusivity to propose a plan came and went without the filing of a plan and no request for an extension was sought. In fact no reorganization plan was ever filed during this lengthy Chapter 11 interlude. The only discernible activity in the case was lift stay contests. Ultimately, in July 1992, a lift stay motion made by Key Bank was granted conditionally. A time table was set to sell the Property and the Debtors were required to commence making post-petition mortgage payments by August 1, 1992, failing which the stay would be lifted absent further order of the Court. The Debtors failed to comply with the conditional order and, on July 8, 1993, Key Bank filed an affidavit of noncompliance, effectively terminating the automatic stay.

Soon thereafter, on July 29, 1993, the case was converted to Chapter 7 on motion of the Debtors. During the Chapter 7 phase, the Debtors failed to appear at the § 341 meeting of creditors. For that reason, the Chapter 7 trustee moved to dismiss the case. Shortly before the hearing on the Chapter 7 trustee's motion to dismiss, the Debtors attended an adjourned § 341 meeting. Soon thereafter, the Chapter 7 trustee submitted a no asset report and withdrew his motion to dismiss. On January 6, 1995, the Debtors were granted a discharge.

### B. *The Second Chapter 11 Filing*

Upon termination of the automatic stay in the Debtors' first bankruptcy case, Key Bank continued its state court foreclosure action. Efforts by the Debtors to vacate the judgment of foreclosure and sale obtained by Key Bank were rejected by the state court. A foreclosure sale of the Property was scheduled for April 18, 1996. On April 17, 1996, the Debtors filed their second Chapter 11 case and thereby stayed the sale. This "reorganization" effort also went nowhere. The Debtors failed to (1) file monthly operating reports, (2) pay United States Trustee quarterly fees, (3) remain current on post-petition administrative expenses, (4) attend the § 341 meeting of creditors, and (5) file a plan of reorganization.

Essentially, this was a single creditor Chapter 11 case, the singular creditor being Key Bank, holder of a mortgage on the Property. The Debtors had no general unsecured creditors and thus were precluded from confirming any plan absent approval of such plan by Key Bank, which was unwilling to consent to the Debtors' proposals. Cram down was unattainable, as a matter of law, because there was no possibility that at least one impaired class of creditors would accept a reorganization plan. *See* 11 U.S.C. §§ 1129(a)(10), (b)(1).

In July 1996, the United States Trustee moved to dismiss the case. An adjournment of the hearing on the motion to dismiss was obtained. No papers were filed in opposition and no appearance was made by or on behalf of the Debtors at that adjourned hearing, held September 5, 1996. The motion was granted and the Court signed an order dismissing the Debtors' second Chapter 11 case on September 24, 1996.

### C. *The Third Chapter 11 Filing*

Upon dismissal of the Debtor's second Chapter 11 case, Key Bank again attempted completion of the Property's foreclosure sale, which was now rescheduled for April 17, 1997. On April 16, 1997, the Debtors filed their third Chapter 11 case, thereby staying the sale once again. This third Chapter 11

case was a virtual carbon copy of the exercise in futility that characterized the Debtors' second Chapter 11 case. Within two weeks of the filing, the United States Trustee moved to dismiss this case. After the Debtors procured two adjournments of the hearing, the motion to dismiss came on for a hearing before the Court on June 19, 1997. The hearing was brief. The Court was informed that the Debtors consented to dismissal of the case. Mindful of the Debtors' long history of futile bankruptcy filings calculated to frustrate Key Banks legitimate foreclosure efforts, the Court observed that the dismissal "will be with prejudice." (Tr., 6/19/97, at 2). In response, Debtors' counsel voiced no objection and even seemed to agree by stating: "With prejudice on 21 days notice. Thank you, Judge." *Id.* The Order was settled on notice to the Debtors and their counsel. No objection or counter-order was interposed. The Court signed the Order, on July 16, 1997, which "dismissed with prejudice" the Debtors' third Chapter 11 case pursuant to § 1112(b).

### D. *The Chapter 13 Filing*

No appeal was taken from the Order, nor was any request made of this Court for reconsideration or clarification. Key Bank proceeded once again to schedule the Property's foreclosure sale, which was now set for September 19, 1997. Notwithstanding the Order, the Debtor obtained new bankruptcy counsel and filed a fourth bankruptcy case on September 17, 1997, this time under Chapter 13. Again, the Debtor's hope was to stay Key Bank on the eve of foreclosure, but that expectation was dashed. In reliance upon the Order, Key Bank completed the foreclosure sale, as scheduled, on September 19, 1997. The Debtor's response is the instant motion to vacate the sale as violative of the automatic stay.

Meanwhile, the Debtor has outlined his Chapter 13 game plan. He advises that the Property is appraised for $135,000.00, and further informs us that his father, who has been "pre-approved" for a $160,000.00 mortgage loan from a lender, has offered to purchase the Property from him. The Debtor, in turn, proposes a Chapter 13 plan to pay Key Bank $160,000.00. The mortgage debt

to Key Bank is, however, far in excess of $160,000.00. That difference, under the Debtor's Chapter 13 plan, would be deemed unsecured debt for which Key Bank would "receive a pro rata share" of its claim "less [the] Trustee's fee and [the] Debtor's attorney's administrative legal fees payable under the Plan."

Apart from the propriety of filing the Chapter 13 case, the Debtor proposes a Chapter 13 plan that would cause an impairment of a home mortgage in violation of the Bankruptcy Code. Section 1322(b) of the Bankruptcy Code provides that a Chapter 13 plan may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence." 11 U.S.C. § 1322(b). This provision prohibits the bifurcation of an undersecured loan into secured and unsecured claims, if the only security for the loan is a lien on the debtor's principal residence. *Nobelman v. American Sav. Bank,* 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993).

## II. DISCUSSION

The fundamental purpose of the Bankruptcy Code is to afford the honest but unfortunate debtor " 'a new opportunity in life with a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt.' " *Grogan v. Garner,* 498 U.S. 279, 286, 111 S.Ct. 654, 659, 112 L.Ed.2d 755 (1991) (quoting *Local Loan Co. v. Hunt,* 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934)). On the other hand, debtors who do not file in good faith should not be afforded the benefits of the bankruptcy process. *See Natural Land Corp. v. Baker Farms, Inc. (In re Natural Land Corp.),* 825 F.2d 296, 297–98 (11th Cir.1987). As stated in *Little Creek Development Co. v. Commonwealth Mortgage Corp. (In re Little Creek Development Co.),* 779 F.2d 1068 (5th Cir.1986), the

> [r]equirement of good faith prevents abuse of the bankruptcy process by debtors whose overriding motive is to delay creditors without benefitting them in any way or to achieve reprehensible purposes. Moreover, a good faith standard protects

the jurisdictional integrity of the bankruptcy courts by rendering their powerful equitable weapons ... available only to those debtors ... with "clean hands."

*Id.* at 1072.

■ Bankruptcy courts are charged with the responsibility of preserving the institutional integrity of the bankruptcy system by enforcing the requirement of good faith. *See In re Phoenix–Piccadilly, Ltd.,* 84 B.R. 843, 845 (Bankr.M.D.Fla.1988). Repeat bankruptcy filings calculated solely to reap the benefits of the automatic stay and frustrate or delay enforcement of a secured creditor's foreclosure rights are an abuse of the system. Like the Debtor here, such repeat bankruptcy filers, often called "serial filers," are a problem both nationally and in this district. Merely dismissing cases initiated in bad faith allows a serial filer the opportunity to file yet again, furthering purposes other than the legitimate aims and objectives contemplated by the Bankruptcy Code. Recognizing the recidivist inclinations of serial filers, courts have employed numerous techniques in an effort to protect the bankruptcy process. In addition to dismissing cases with prejudice to refiling, those methods have included permanent bans on discharge, *see, e.g., Leavitt v. Soto (In re Leavitt),* 209 B.R. 935 (9th Cir. BAP 1997) (denying future discharge of present debts), impositions of prospective relief, *see, e.g., In re Greenberg,* 200 B.R. 763 (Bankr.S.D.N.Y. 1996) (nullifying the stay in future filings with respect to a particularly frustrated creditor), and awards of sanctions and costs, *see, e.g., In re Bono,* 70 B.R. 339, 345 (Bankr.E.D.N.Y.1987) (stating that lawyers "must be discouraged from becoming partners to such abusive filing").

■ Here, the fact that the Debtor's numerous bankruptcy petitions were filed solely to delay a foreclosure sale of the Property, rather than forwarding any honest attempt to reorganize debt, is glaringly apparent. Although filing for bankruptcy on the eve of foreclosure is not *per se* bad faith, *see Putnam Trust Co. v. Frenz (In re Frenz),* 142 B.R. 611, 614 (Bankr.D.Conn.1992); *In re Aemico, Inc.,* 54 B.R. 546, 547 (Bankr. D.Md.1985), the Debtor's penchant for repeatedly doing so can be considered as evidence of bad faith, *see Tsafaroff v. Taylor (In re Taylor),* 884 F.2d 478, 485 (9th Cir.1989); *In re Eatman,* 182 B.R. 386, 392 (Bankr. S.D.N.Y.1995); *In re Dami,* 172 B.R. 6, 10 (Bankr.E.D.Pa.1994); *In re Earl,* 140 B.R. 728, 739 (Bankr.N.D.Ind.1992). In assessing the Debtor's last minute bankruptcy filings to stay foreclosure sales, a review of his Chapter 11 cases show that the Property was listed as the sole asset, general unsecured creditors were non-existent, and Key Bank was unreceptive to the Debtor's proposals. This precluded any legally available method to force through confirmation of a plan. *See* 11 U.S.C. §§ 1129(a)(10), (b)(1); *In re 266 Washington Assocs.,* 141 B.R. 275 (Bankr. E.D.N.Y.), *aff'd,* 147 B.R. 827 (E.D.N.Y. 1992); *see also In re Natural Land Corp.,* 825 F.2d at 298 (outlining similar factors as evidence of a debtor's lack of good faith); *In re Little Creek Dev. Co.,* 779 F.2d at 1072–73 (same). There was also not even the slightest indication that the Debtor possessed the financial wherewithal necessary to realistically fund a viable plan. Finally, the Debtor failed to exert any cognizable effort to propose a plan of reorganization. His efforts were instead focused only upon prolonging bankruptcy protection by opposing or delaying adjudications of motions to dismiss or motions that sought to lift the stay on the Property. The unequivocal conclusion is that the Debtor filed in bad faith merely to invoke the automatic stay and delay Key Bank's foreclosure of the Property. Such actions properly constituted cause to dismiss the Debtor's third Chapter 11 case with prejudice to refiling, and thereby provide Key Bank an opportunity to complete the artificially protracted foreclosure proceedings. *See In re Trina Assocs.,* 128 B.R. 858, 872 (Bankr.E.D.N.Y.1991); *In re McKissie,* 103 B.R. 189, 192 (Bankr.N.D.Ill.1989).

■ The relevant portion of the Order reads "that pursuant to 11 U.S.C. Section 1112(b), this case commenced under Chapter 11 of the Bankruptcy Code be, and hereby is, dismissed with prejudice."[1] Like other

1. Section 1112(b) gives bankruptcy courts wide discretion for determining whether to convert a

courts that have dismissed cases with prejudice, barring debtors from refiling so that creditors may complete foreclosure actions, this Court relied on § 105(a) and § 349(a) of the Bankruptcy Code. *See, e.g., Stathatos v. United States Trustee (In re Stathatos)*, 163 B.R. 83, 87–88 (N.D.Tex.1993); *Owings v. Doniff (In re Doniff)*, 133 B.R. 351, 354 (Bankr.E.D.Va.1991); *In re Dilley*, 125 B.R. 189, 197 (Bankr.N.D.Ohio 1991). Section 105(a) of the Bankruptcy Code provides bankruptcy courts with the authority to bar a debtor from refiling a petition for relief, *see In re Robinson*, 198 B.R. 1017, 1022–23 (Bankr.N.D.Ga.1996); *In re Stuart Glass & Mirror, Inc.*, 71 B.R. 332, 334 (Bankr. S.D.Fla.1987), because it vests the courts with authority to exercise a broad range of powers within the administration of a bankruptcy case which are "necessary or appropriate to carry out the provisions" of the Bankruptcy Code "or to prevent an abuse of process." 11 U.S.C. § 105(a). Section 349(a) of the Bankruptcy Code establishes a general

rule that dismissal of a bankruptcy case is without prejudice, but at the same time expressly grants a bankruptcy court the authority to dismiss a case with prejudice to a subsequent filing of any bankruptcy petition. Section 349(a) reads as follows:

Unless the court, for cause, orders otherwise, the dismissal of a case under this title does not bar the discharge, in a later case under this title, of debts that were dischargeable in the case dismissed; nor does the dismissal of a case under this title prejudice the debtor with regard to the filing of a subsequent petition under this title, except as provided in section 109(g) of this title.

11 U.S.C. § 349(a). Thus, if "cause" warrants, a court is authorized, pursuant to § 349(a), to dismiss a bankruptcy case with prejudice to refiling. *See Lerch v. Federal Land Bank of St. Louis (In re Lerch)*, 94 B.R. 998, 1002 (N.D.Ill.1989).[2]

Chapter 11 case to Chapter 7 or to dismiss the case outright, and provides in pertinent part that

after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title or may dismiss a case under this chapter, whichever is in the best interest of creditors and the estate, for cause, including—
(1) continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation;
(2) inability to effectuate a plan; [or]
(3) unreasonable delay by the debtor that is prejudicial to creditors....

11 U.S.C. § 1112(b).

2. Not all courts agree that § 349(a) grants such wide latitude; the most notable is *Frieouf v. United States (In re Frieouf)*, 938 F.2d 1099 (10th Cir.1991), *cert. denied*, 502 U.S. 1091, 112 S.Ct. 1161, 117 L.Ed.2d 408 (1992). According to the Tenth Circuit, the introductory language of § 349(a), "[u]nless the court, for cause, orders otherwise," applies only to the court's authority to bar a discharge in a debtor's future case. *See id.* at 1103. A ban on future filing, on the other hand, is allowed only when the requirements of § 109(g) are met. "Section 349(a) does not deny a debtor all future access to bankruptcy court, *except as provided in section 109(g)." Id.*

In contrast, § 349(a) has been used by many bankruptcy courts to impose prohibitions on future filings independent of § 109(g) and in excess of the 180-day limit found in that statute. For example, in *In re Herrera*, 194 B.R. 178 (Bankr. N.D.Ill.1996) the court cited the legislative histo-

ry of § 349(a) that supported its use to control abusive, multiple filings, and found cause to impose a one-year bar to refiling. *See id.* at 189–90. Similarly, in *In re Robertson*, 206 B.R. 826 (Bankr.E.D.Va.1996), the court stated that there was "no sound reason to set an arbitrary limit to the permissible duration of a dismissal with prejudice," *id.* at 830, and held that it was within a bankruptcy court's equitable powers to dismiss for cause in accordance with § 349(a), *see id.* at 830 n. 4. The majority of courts after *Frieouf* have been critical of the Tenth Circuit's approach, and instead find discretion to limit access to future bankruptcy filing in appropriate circumstances. *See, e.g., Jolly v. Great W. Bank (In re Jolly)*, 143 B.R. 383, 387–88 (E.D.Va.1992), *aff'd*, 45 F.3d 426 (4th Cir.1994); *In re Earl*, 140 B.R. at 741; *see also Cooper v. Kramer (In re Cooper)*, 153 B.R. 898, 901 (D.Colo.) (recognizing *Frieouf* as a doubtful and unpopular decision), *aff'd*, 13 F.3d 404 (10th Cir.1993).

Likewise, § 105(a) has been recognized as granting bankruptcy courts the authority to impose temporary bars to refiling, again independent of § 109(g). As observed by one court:

The usual remedy for a bad faith filing is a dismissal pursuant to § 109(g), which works to prohibit the filing by a debtor of any case under Title 11 for a period of 180 days.... Further authority for such a dismissal arises under § 105(a), which empowers the court to issue any order, process or judgment which is necessary or appropriate to prevent abuse of the bankruptcy system.

*In re Robinson*, 198 B.R. at 1022–23 (citation omitted).

At the hearing on the United States Trustee's motion to dismiss the Debtor's third Chapter 11 case there was no question that cause existed to dismiss the case with prejudice. Although a formal recitation of the reasoning for ordering a prohibition to refiling was not placed upon the record, this Court found little reason to do so; the cause was patent and quite clear to all present. The Debtor's history of strategically-timed, meritless Chapter 11 cases, filed solely to obtain the benefit of the Bankruptcy Code's automatic stay as a means of avoiding foreclosure of the Property, was obvious. In fact, the Debtor's attorney assented to the prejudicial dismissal without comment.[3]

■ The instant Chapter 13 case is yet another desperate effort by the Debtor to forestall Key Bank's legitimate efforts to foreclose. However, unlike the Debtor's other bankruptcy filings, this latest trip to the bankruptcy court failed to avert Key Bank's foreclosure sale. Even though the sale was conducted two days after the Debtor filed, the petition was filed in violation of this Court's Order. In effect, the Debtor was ineligible for bankruptcy relief and the present bankruptcy case is deemed a nullity. *See In re Felberman,* 196 B.R. 678, 688 (Bankr. S.D.N.Y.1995); *In re Bresler,* 119 B.R. 400, 402 (Bankr.E.D.N.Y.1990). To hold otherwise would give countenance to the Debtor's disobedience of the Order, and open the door to yet another bankruptcy filing by the Debtor in a future effort to delay Key Bank's foreclosure of the Property.

The Debtor asserts the untenable notion that the instant Chapter 13 case was permissibly filed despite the Order dismissing his previous case with prejudice. Of the various arguments forwarded by the Debtor, few merit any serious or in-depth inquiry. While some plot a course which first requires embracing outlandish assumptions, others are formulations based upon a gross ignorance of the interaction between various provisions of the Bankruptcy Code; both avenues lead to contentions that are in large measure simply incoherent nonsense. In broad terms, the Debtor complains that (1) there was simply no justification for this Court to enter the Order barring any refiling, (2) the Order itself is fatally flawed in form, and therefore void, and (3) the Order only bars refiling a subsequent Chapter 11, and not a petition under Chapter 13.[4] The Debtor concludes that because no court order or express statutory provision precluded him from filing the present Chapter 13 bankruptcy petition, Key Bank's foreclosure sale of the Property was a clear violation of the automatic stay and must be deemed void.

The Debtor's assertions are flawed. First, he cites inapplicable and irrelevant state case law to support his arguments that the Court lacked any basis to enter a prejudicial dismissal, and that the form of the Order fails to pass muster. He next asserts that because the scope and duration of the prejudicial dismissal are not specified, construing the Order as a prohibition to filing a subsequent petition for relief under any chapter would unjustly bar the Debtor from the benefits of

3. At the hearing, which was attended by the Debtors, their attorney adopted the Court's simple declaration that the dismissal would be with prejudice.

> MR. BROWN: Judge, I am just a hired gun. I have spoken to Mr. Dimino [U.S. Trustee's Office]. I am going back into the woodwork. I agreed to withdraw my opposition to the application [to dismiss]. He is going to settle an order.
> THE COURT: That will be with prejudice.
> MR. BROWN: With prejudice on 21 days notice. Thank you, Judge.

(Tr., 6/19/97, at 2).

4. The Debtor also asserts that he was not barred, pursuant to § 109(g), from seeking bankruptcy relief. Section 109(g) bars refiling by individuals who were debtors in the previous 180 days, if the case was: (1) dismissed for willful failure to abide by court orders or to properly prosecute the case, or (2) voluntarily dismissed during the pendency of a motion seeking relief from the automatic stay. In this connection, we would only note that a § 109(g) bar to refiling may have been triggered in the present case. A finding of willful failure to abide by a court order or to properly prosecute the case need not be made at the time of dismissal, but can be made subsequent to a new filing once the court is asked to determine if § 109(g) should be invoked to bar that filing. *See Montgomery v. Ryan (In re Montgomery),* 37 F.3d 413, 415 (8th Cir.1994); *In re Faulkner,* 187 B.R. 1019, 1023 (Bankr.S.D.Ga. 1995). Regardless, the present opinion, anchoring the bar to refiling on § 105(a) and § 349(a), renders such a determination moot.

the Bankruptcy Code for life. The only sensible reading, according to the Debtor, is that the prejudicial bar to refiling applies only to Chapter 11. None of the language in the Order dictates reaching a different result, and only § 1112(b) of the Bankruptcy Code is mentioned. That section provides that "the court may convert a case under this chapter ... or may dismiss a case under this chapter." 11 U.S.C. § 1112(b). Therefore, deduces the Debtor, the prohibition on future filings is limited to cases "under this chapter" (i.e., Chapter 11) and cannot serve to bar his Chapter 13 filing.

This argument is simply oblivious to the existence of § 349(a) and its interrelationship with § 1112(b). Section 1112(b) provides the substantive criteria for dismissal of a Chapter 11 case. The effect of such a dismissal is governed by § 349(a), which is made applicable to Chapter 11 cases by § 103(a) of the Bankruptcy Code. *See* 11 U.S.C. § 103(a). As shown above, § 349(a) provides the authority, for cause, to dismiss a bankruptcy case with prejudice to a subsequent filing of any bankruptcy petition. Moreover, the Debtor apparently concedes that bankruptcy courts have the authority to order bars to refiling pursuant to § 105(a), but that any orders issued by those courts "should specify that they are by § 105(a)." (Tr., 12/9/97, at 5). In essence, the Debtor objects to the form of the Order, and seeks an interpretation that would permit him to escape its operative intent. Plainly, a bar to refiling limited to Chapter 11 cases, as espoused by the Debtor, would serve no purpose whatsoever and surely was not the intent of this Court.

The Debtor does correctly point out that the Order omitted reference to the scope or duration of the prejudicial bar to refiling. This omission, however, does not translate into an opportunity for the Debtor to unilaterally assign an esoteric reading that strains common sense or common practice. The intent of the Court was to bar refiling to afford Key Bank time to foreclose. Indeed, in light of the totality of the circumstances existing at the time, this is the only reasonable interpretation that can be given to the Order. Bankruptcy courts often order dismissals "with prejudice" with the unspoken intention of imposing a temporary bar to refiling under the Bankruptcy Code. *See, e.g., Colonial Auto Ctr. v. Tomlin (In re Tomlin)*, 105 F.3d 933, 938 (4th Cir.1997) (observing that "it has become common bankruptcy practice to employ the phrase 'dismissed with prejudice' to refer to a temporary bar to filing another petition"); *In re Robinson*, 198 B.R. at 1022, (stating that bankruptcy practitioners frequently use the term "dismissal with prejudice" to denote a temporary bar to refiling); *In re Hollis*, 150 B.R. 145, 146 (D.Md.1993) (opining that "[w]hen a petition is dismissed with prejudice, the debtor is barred from refiling for 180 days under 11 U.S.C. § 109"). Contrary to the Debtor's contentions, the Order is neither extraordinary, nor inscrutable.

A viable legal system starts with the basic proposition that there must be compliance with all orders and judgments entered by courts of competent jurisdiction. If a person to whom a court directs an order believes that the order is incorrect, the appropriate remedy is to appeal, but, absent a stay, he must comply with the order's provisions. Proper administration of justice by the courts requires that "an order issued by a court with jurisdiction over the subject matter and person must be obeyed by the parties until it is reversed by orderly and proper proceedings." *United States v. United Mine Workers of America*, 330 U.S. 258, 293, 67 S.Ct. 677, 696, 91 L.Ed. 884 (1947).

The Debtor justifies his Chapter 13 filing on September 17, 1997 by contending the Order was wrong. The Order was signed July 16, 1997 and entered the following day. No appeal was taken. No motion for reconsideration or clarification of the Order was made to this Court. The Order was settled on notice to the Debtor and Debtor's counsel and not a word was heard. Instead, the Debtor waited and filed a Chapter 13 petition in defiance of the Order, two days prior to Key Bank's third scheduled foreclosure sale of the Property. Even assuming some validity to the Debtor's arguments, any imperfection or error in the Order does not give license to its disobedience. A person may not simply ignore a court's directives and

then engage in after the fact rationalizations designed to show why that disobedience is actually justified. As one circuit court of appeals recently stated:

> The judicial system's need for order and finality requires that orders of [bankruptcy] courts having jurisdiction to enter them be obeyed until reversed, even if proper grounds exist to challenge them. A challenge for error may be directed to the ordering court or a higher court, as rules provide, but it may not be made collaterally unless it is based on the original court's lack of jurisdiction.

*Spartan Mills v. Bank of Am. Ill.,* 112 F.3d 1251, 1255 (4th Cir.), *cert. denied,* —— U.S. ——, 118 S.Ct. 417, 139 L.Ed.2d 319 (1997); *accord Celotex Corp. v. Edwards,* 514 U.S. 300, 313, 115 S.Ct. 1493, 1501, 131 L.Ed.2d 403 (1995). As observed long ago in *Gompers v. Buck's Stove & Range Co.,* 221 U.S. 418, 31 S.Ct. 492, 55 L.Ed. 797 (1911):

> If a party can make himself a judge of the validity of orders which have been issued, and by his own act of disobedience set them aside, then are the courts impotent, and what the Constitution now fittingly calls the 'judicial power of the United States' would be a mere mockery.

221 U.S. at 450, 31 S.Ct. at 501.

### III. CONCLUSION

For the foregoing reasons this Court finds no merit to the Debtor's motion to set aside the foreclosure sale. Accordingly, that motion is denied. The instant Chapter 13 case was filed in violation of the Order dismissing the Debtor's third Chapter 11 case "with prejudice." The Debtor was thus ineligible to file under any chapter of the Bankruptcy Code. Therefore, this Chapter 13 case is dismissed as a nullity. The Court, however, reserves jurisdiction to determine the Chapter 13 Trustee's pending motion to impose sanctions for this impermissible filing.