NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted August 29, 2007[*]
Decided August 31, 2007

**Before**

Hon. WILLIAM J. BAUER, *Circuit Judge*

Hon. RICHARD A. POSNER, *Circuit Judge*

Hon. JOEL M. FLAUM, *Circuit Judge*

No. 07-1042

|  |  |
|---|---|
| In re: | Appeal from the United States District Court for the Southern |
| GORDON B. DEMPSEY, | District of Indiana, |
| *Debtor-Appellant.* | Indianapolis Division |
|  | No. 1:04-CV-1308 |
|  | John Daniel Tinder, *Judge.* |

**O R D E R**

A bankruptcy court dismissed Gordon Dempsey's Chapter 13 petition because he was unable to propose a confirmable plan in the two-year span of his case. Dempsey appealed the dismissal and several earlier rulings to the district court, which affirmed in all respects. We also affirm.

---

[*]After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R. App. P. 34(a)(2).

In March 2002 Dempsey defaulted under an installment contract to purchase from George and Oleva Carter a dilapidated block of residential units in Indianapolis, Indiana called Walnut Court. The Carters pursued and obtained a judgment against him in state court, which scheduled a foreclosure sale for that October. One day before the sale date, Dempsey filed his bankruptcy petition.

The Carters submitted a claim in bankruptcy for the arrearage on Walnut Court, determined by the bankruptcy court to be $133,000, an amount for which they were oversecured, meaning the value of the property exceeded the arrearage. For the next two years Dempsey, proceeding *pro se,* and the Carters litigated in the bankruptcy court the feasibility of Dempsey's eight proposed Chapter 13 plans to satisfy the arrearage. The plans, like many of Dempsey's submissions, are difficult to understand, but he principally proposed to pay the arrearage from the proceeds of the sale of two other properties, "Green Hills" and "Rex Court." The Carters objected to the ability of these properties to generate the necessary funds. The court ultimately rejected each plan due to infeasibility. Rex Court and Green Hills sold, but later, and for less than Dempsey had anticipated.

In October 2003, shortly after Dempsey proposed his fourth plan, the Carters moved to add their attorneys fees, $108,955, to their arrearage claim. *See* 11 U.S.C. § 506(b). Dempsey vigorously opposed the request, arguing that it was unreasonably high because the Carters had "nitpicked" at his proposed plans despite being oversecured. He moved for sanctions under Bankruptcy Rule 9011. The court reduced the amount of the Carters's fee request by 25% to $80,716, and granted it in March 2004. The court determined that as to this reduced fee level the Carters had taken actions reasonably necessary to protect their interests. The court further explained that Dempsey's ongoing inability to propose a confirmable plan and his general unfamiliarity with the Bankruptcy Code had made this an unusual case justifying the large fee award. The court denied Dempsey's motion for sanctions.

In the meantime, in November 2003, the Carters also moved to lift the automatic stay as applied to their efforts in state court to foreclose on Walnut Court because Dempsey was not "adequately protect[ing]" their interests. *See* 11 U.S.C. § 362(d)(1). The court initially denied the motion but decreed in December 2003 that if Dempsey failed to pay the arrearage by June 30, 2004 it would then lift the stay. When Dempsey did not cure the arrearage on time, the court lifted the stay. The Carters then immediately sought a foreclosure sale of Walnut Court, which the state court scheduled for late September. But in August Dempsey finally sold Green Hills, although he netted only $13,000, much less than the Carters's claim for arrearage. Proof of the sale nonetheless prompted the district court to grant Dempsey's emergency motion to reinstate the stay on the day Walnut Court was to be foreclosed.

Finally, in November 2004, the bankruptcy court denied confirmation of Dempsey's final plan. The court determined that Dempsey could not generate the anticipated and necessary payments to satisfy both pre- and post-petition debts. In particular, the court disagreed that Walnut Court would begin producing sufficient rental income after a proposed confirmation because Dempsey had no funds to complete its needed rehabilitation and was unable to pay several post-petition bills for the project. This finding was the last straw for the court, which finally granted the Carters's and the trustee's pending motions to dismiss Dempsey's petition under 11 U.S.C. § 1307(c)(1) for "unreasonable delay" in progressing his case. The court also, albeit without citing to a particular Code provision, barred Dempsey from refiling for bankruptcy for a year on the ground that a future filing would merely stall the foreclosure sale without a confirmable plan.

Dempsey consolidated his appeals to the district court. He appealed the fee award; the denial of his motion for sanctions; the lifting of the automatic stay; the dismissal of his petition; and the imposition of the filing bar. The district court affirmed the rulings. Dempsey raises each of these issues in this appeal.

We first address the award of $81,716 in attorneys fees to the Carters. The Bankruptcy Code allows attorneys fees as part of an oversecured creditor's claim as long as the fees are reasonable and, as here, provided for in the parties' underlying agreement. *See* 11 U.S.C. § 506(b); *United States v. Ron Pair Enter., Inc.,* 489 U.S. 235, 241 (1989). Dempsey disputes only that the fees are reasonable. He does not challenge the rates charged, but instead argues that many of the Carters's actions were unnecessary and unduly aggressive in light of their oversecured status.

The reasonableness requirement in § 506(b) ensures that an oversecured creditor is not given a "blank check to incur fees and costs which will automatically be reimbursed out of its collateral." *In re Lund,* 187 B.R. 245, 251 (N.D. Ill. 1995). To assess reasonableness, the bankruptcy court should examine whether the creditor took the kind of actions a similarly situated creditor would have taken to protect its rights in its collateral. *See In re White,* 260 B.R. 870, 880 (8th Cir. BAP 2001). We review only for an abuse of discretion a bankruptcy court's award of attorneys fees. *See In re Bond.,* 254 F.3d 669, 676 (7th Cir. 2001).

The bankruptcy court did not abuse its discretion here. The Carters's opposition to Dempsey's proposed plans consisted of principled objections a prudent creditor would have raised to protect its rights. Specifically, they objected that the proposed sales of Rex Court and Green Hills, a proposal common to each of the plans, would not pay off the pre-petition arrearage within a "reasonable time." *See* 11 U.S.C. § 1322(b)(5). These objections were reasonable because Rex Court and Green Hills were undesirable properties that had languished unsold on the market for nearly a year. Rather than allaying this concern with an additional, timely

source of revenue, Dempsey merely projected *later* sales dates and *lower* sales prices for these same properties with each subsequent plan he proposed to the court, thereby prompting the same objections.

Dempsey also contends that a fee award totaling 60% of a claim, like the one here, is *per se* unreasonable. We are aware that the proportion of fees sought to the amount of a creditor's claim can be one indicator of reasonableness. S*ee In re Lund,* 187 B.R. at 251. But another factor is the delay in resolving a creditor's claim occasioned by the debtor's tactics. *See In re Vu,* 366 B.R. 511, 515 -516 (D. Md. 2007); *In re Larson,* 346 B.R. 693, 701 (E.D.Va. 2006). Here, when the bankruptcy court granted the fee request, the case had already been litigated for 17 months, with the Carters having had to challenge several unconfirmable plans. By contrast, according to the bankruptcy court a typical Chapter 13 plan is confirmed within six to nine months of the petition date. In addition, the very nature of Dempsey's numerous submissions compounded the litigation burden on the Carters: they are lengthy, confusing, and raise issues that were not properly before the bankruptcy court. Under these circumstance, the fee ruling was not an abuse of discretion.

Dempsey has also appealed the bankruptcy court's denial of his Rule 9011 motion for sanctions for pursuing attorneys' fees. Rule 9011 provides, among other things, for the sanctioning of a party who purposefully files a pleading or motion to cause "unnecessary delay" or to "needless[ly] increase the cost of litigation." *See* BR 9011; *Adair v. Sherman,* 230 F.3d 890, 895 n.8 (7th Cir. 2000). We have already determined that the action the Carters took to seek fees was reasonable to the extent of the fee award. This denial of the motion was therefore not an abuse of discretion.

Dempsey next argues that the bankruptcy court's December 2003 order allowing for the lifting of the stay if the arrearage was not paid by June 30, 2004 was an abuse of discretion because that cure period was unreasonably short. The issue is moot, however. "The stay is dependent on the existence of the bankruptcy." *In re Statistical Tabulating Corp.,* 60 F.3d 1286, 1290 (7th Cir. 1995). Even if the bankruptcy court had never lifted the stay Dempsey would have been no better off because the Carters did not foreclose on Walnut Court until after his petition was dismissed. *See generally Lewis v. Cont'l Bank Corp.,* 494 U.S. 472, 478 (1990); *Brown v. Bartholomew Consol. Sch. Corp.,* 442 F.3d 588, 596 (7th Cir. 2006).

Dempsey disagrees; he appears to believe that the lifting of the stay harmed him because it led to the dismissal of his case. Specifically, he contends that had the stay not been lifted, he could have used the proceeds from the Green Hills sale to begin paying the arrearage rather than spend time fighting the possible foreclosure. But the proceeds could not have been disbursed without a confirmed plan, *see* 11 U.S.C. § 1326, and Dempsey was unable to propose a confirmable plan

either before or after the stay was lifted and even factoring the anticipated proceeds from Green Hills.

This brings us to the dismissal of Dempsey's petition under 11 U.S.C. § 1307(c)(1). We review that ruling for an abuse of discretion and its underlying factual findings for clear error. *See In re Nelson,* 343 B.R. 671, 674 (9th Cir. BAP 2006); *In re Hall,* 304 F.3d 743, 746 (7th Cir. 2002). Section 1307(c)(1) provides that a bankruptcy court may dismiss a Chapter 13 petition for "unreasonable delay by the debtor that is prejudicial to creditors." 11 U.S.C. § 1307(c)(1); *In re Cabral,* 285 B.R. 563, 572 (1st Cir. BAP 2002). One such well-recognized instance of prejudice is the debtor's protracted inability to demonstrate the feasibility of a plan. *See Howard v. Lexington Invs., Inc.,* 284 F.3d 320, 323 (1st Cir. 2002); *In re Badalyan,* 236 B.R. 633, 637-38 (6th Cir. BAP 1999); *In re Blaise,* 219 B.R. 946, 950 (2d Cir. BAP 1998). Dempsey argues only that the bankruptcy's courts underlying finding of infeasibility was clearly erroneous because his perceived inability to make the required payments arose solely on account of what he deems the "excessive" fee award. But we have already determined that the award was reasonable. And Dempsey has not demonstrated that it was clearly erroneous for the bankruptcy court to find that he couldn't reliably produce the necessary funds from the various sources he listed to satisfy his collective debts.

Dempsey next argues that the bankruptcy court abused its discretion by imposing the one-year filing bar. Dempsey looks to 11 U.S.C. § 109(g), which provides for barring a debtor who willfully refuses to prosecute his case, and deduces that he was ineligible for such a sanction because the bankruptcy court never found that he acted in bad faith. But § 105(a) of the Code, which vests bankruptcy courts with the authority to take those actions "necessary or appropriate to carry out the provisions" of the Bankruptcy Code "or to prevent an abuse of process," *see* 11 U.S.C. § 105(a), independently authorizes bankruptcy courts to prohibit bankruptcy refilings from debtors who are demonstrably ineligible to receive bankruptcy relief. *See In re Glenn,* 288 B.R. 516, 520 (E.D. Tenn. 2002); *In re Casse,* 219 B.R. 657, 662 (E.D.N.Y. 1998). This includes cases where the debtor has not acted in bad faith. *See, e.g., In re Dent,* 275 B.R. 625, 633 n.5 (M.D. Ala 2002). Having found after rejecting eight plans that Dempsey's current financial situation necessarily prevents him from presenting a workable plan for the near term, the bankruptcy court did not abuse its discretion in determining that for one year "any subsequent case which the Debtor would file would be used solely to further delay the Sheriff's sale of Walnut Court."

Dempsey's final arguments have been considered and require no discussion. The judgment is AFFIRMED.