In re Terrence **ROBINSON,** Debtor.

Bankruptcy No. 95–78739.

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

July 25, 1996.

Herbert E. Heitman, Atlanta, GA, for Debtor.

Lynn Wood, Shapiro & Swertfeger, Atlanta, GA, for Defendant/Respondent.

## ORDER

MARGARET H. MURPHY, Bankruptcy Judge.

This matter arises on Debtor's motion to dismiss and the motion of Fleet Finance, Inc. ("Fleet") for imposition of sanctions against Debtor and Debtor's attorney. Pursuant to Debtor's motion to dismiss, an order was entered February 28, 1996, dismissing this case, but on the same day, Fleet filed an objection to the dismissal. By order entered March 19, 1996, the dismissal order was vacated and hearing was scheduled. At the hearing, Debtor's attorney and Fleet's attorney were present. Debtor did not appear.

## STATEMENT OF FACTS

The instant case is Debtor's second Chapter 13 case. Debtor's first case was filed June 6, 1995, Case No. 95–67770 (the "First Case"). Fleet was the only creditor listed in Debtor's First Case. Fleet's claim is secured by Debtor's residence. At the time the First Case was filed, Debtor was in default on its debt to Fleet and the property was scheduled for foreclosure sale. Debtor's prepetition arrearage was $20,908.73.

Debtor failed to make postpetition payments to Fleet during the First Case until Fleet filed a motion for relief from stay. An

order requiring Debtor to make timely post-petition payments to Fleet was entered in September, 1995, but Debtor made only one payment to Fleet thereafter. Debtor's case was dismissed in November, 1995 on the Chapter 13 Trustee's report of delinquency in plan payments.

Following dismissal, Fleet proceeded with its plans to foreclose on Debtor's property. On December 29, 1995, on the eve of fore-closure, Debtor filed the instant case. This case commenced upon the filing of a skeletal petition. A "skeletal" petition is one in which no schedules and plan are filed with the petition. Without the Schedules, the one-time opportunity for creditors to examine the Debtor at the meeting of creditors held pursuant to 11 U.S.C. § 341(a) (the "341 Meeting"), without incurring special costs, is a wasted expenditure of time, abusive to creditors and the proper operation of bankruptcy law. Debtor filed no Schedules, filed no plan,[1] and listed only Fleet on the mailing matrix.[2] Both Debtor and Debtor's attorney failed to attend the 341 Meeting and Debtor made no plan payments to the Chapter 13 Trustee as required by 11 U.S.C. § 1326. On the day of Debtor's 341 Meeting, apparently in response to a representation by Debtor's attorney that he would be filing that day a voluntary dismissal of the case, Fleet filed a motion for relief from stay.[3]

While only **Debtor's** motion to dismiss is addressed in this order, a review of the timing of and the pleadings filed by both Fleet and Debtor is in order. Debtor's 341 Meeting was scheduled for February 15, 1996; on the same day, Fleet filed its Motion For Relief from Stay in order to proceed with foreclosure. On February 21, 1996, Fleet filed an Objection to Confirmation and Request for Dismissal with Prejudice (see n. 7) and on February 22, 1996, filed a Motion for Sanctions. The hearing on confirmation of Debtor's (unfiled) plan was scheduled for February 29, 1996. With its responses to Fleet's various pleadings, Debtor also filed, on March 29, 1996, a Motion for Sanctions against Fleet and its attorneys, which was withdrawn April 5, 1996.

In response to Fleet's motion for imposition of sanctions, Debtor's attorney explained that Debtor informed Debtor's attorney very early in the case, approximately a week or ten days after filing, that Debtor would be dismissing this case because Debtor had obtained refinancing of the Fleet loan. Therefore, Debtor concedes that, almost from the inception of the case, he had no intention to reorganize under Chapter 13. It developed that finalizing the details of the refinancing took longer than Debtor expected. Debtor's attorney determined that, to protect Debtor from action against the property by Fleet, he would not dismiss the case, but, to save his client money, he would also not file the Schedules or attend the 341 Meeting. Debtor finally filed a voluntary dismissal of this case February 26, 1996, approximately two months after the filing date. In connection with this case, Fleet has incurred attorneys fees and expenses, including $350 for preparation and prosecution of Fleet's motion for relief from stay in this case, plus the $60 filing fee, and foreclosure attorneys fees of $400 plus $303.50 for expenses. A reasonable fee for preparing and prosecuting the

---

1. Bankruptcy Rule 1007 requires a debtor to file schedules of assets and liabilities, a schedule of current income and expenditures, a schedule of executory contracts and unexpired leases, and a statement of financial affairs (collectively referred to as the "Schedules"). If those Schedules are not filed with the petition, they must be filed within 15 days thereafter. Bankruptcy Rule 3015 requires a Chapter 13 debtor to file a plan with the petition or within 15 days thereafter. Debtor may obtain an additional 15 days to file the required documents upon motion and for good cause shown, but it is the policy and practice in this district to grant only one such 15–day extension so that the filed Schedules will be available to creditors and the Trustee 5–7 days prior to the 341 Meeting, over which the Chapter 13 Trustee presides.

2. Bankruptcy Rule 1007(a)(1) requires Debtor to file a list of names and addresses of creditors unless the petition is accompanied by a schedule of liabilities. BLR 715–1(e) N.D.Ga. requires every debtor to file with the petition a list of all creditors and their addresses in a mailing matrix format, which facilitates and expedites noticing of creditors.

3. The voluntary dismissal of a Chapter 13 case while a motion for relief from stay is pending renders the debtor ineligible to be a debtor under Chapter 13 for 180 days. 11 U.S.C. § 109(g)(2).

motion for sanctions is $500. Debtor's attorney was paid a prepetition retainer of $200.

## CONCLUSIONS OF LAW

 Section 1325(a) of the Bankruptcy Code sets forth a good faith requirement in Chapter 13. 11 U.S.C. § 1325(a). Bankruptcy courts have a duty to preserve the bankruptcy process for its intended purpose and may dismiss a Chapter 13 case which is filed in bad faith. *Shell Oil Co. v. Waldron,* 785 F.2d 936 (11th Cir.1986). The standard for determining whether a petition is filed in good faith is a "totality of the circumstances" test. *Johnson v. Home State Bank,* 501 U.S. 78, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991); *Jim Walter Homes, Inc. v. Saylors,* 869 F.2d 1434 (11th Cir.1994); *Kitchens v. Georgia Railroad Bank and Trust Co.,* 702 F.2d 885 (11th Cir.1983). The factors to be considered in determining whether a petition was filed in good faith are the "*Kitchens* Factors":

1. The amount of the debtor's income from all sources;
2. The living expenses of the debtor and his dependents;
3. The amount of attorney's fees;
4. The probable or expected duration of the debtor's Chapter 13 plan;
5. The motivations and sincerity of the debtor in seeking relief under the provisions of Chapter 13;
6. The debtor's degree of effort;
7. The debtor's ability to earn and the likelihood of fluctuation in earnings;
8. Special circumstances such as inordinate medical expenses;
9. The frequency with which the debtor has sought relief under the Bankruptcy [Code].
10. The circumstances under which the debtor has contracted debts and has demonstrated *bona fides,* or lack thereof, in dealings with creditors;
11. The burden which the plan's administration would place on the Trustee;
12. The extent to which claims are modified and the extent of preferential treatment among classes of creditors;
13. Substantiality of repayment to the unsecured creditors;
14. Consideration of the type of debt to be discharged and whether such debt would be nondischargeable under a Chapter 7 case;
15. The accuracy of the plan's statements of debts and expenses and whether any inaccuracies are an attempt to mislead the court; and
16. Other factors or exceptional circumstances.

*Kitchens,* 702 F.2d 885.

 In the event of serial petitions, to avoid dismissal on the grounds of bad faith, a debtor usually should be able to show a *change in circumstances* between the two filings. *In re Jones,* 105 B.R. 1007 (N.D.Ala. 1989).[4] A finding of bad faith does not require a finding of actual fraud, malice, scienter or an intent to defraud. *Waldron,* 785 F.2d 936 (11th Cir.1986).

 Filing even a skeletal petition secures the protection of the automatic stay of 11 U.S.C. § 362(a) for both the honest debtor and the abusive debtor. The automatic stay serves to protect the honest debtor in desperate financial circumstances from creditor action and to provide a much-needed "breathing spell" to marshal resources and prepare to deal with creditors in a fair and orderly manner. *NLRB v. Bildisco & Bildisco,* 465 U.S. 513, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984). The abusive debtor also obtains the protection of the automatic stay but employs it to delay or thwart creditor action while refusing to fulfill the duties imposed by the Bankruptcy Code. The uses of the automatic stay as both a shield and a weapon are well-known to debtors' attorneys and to some debtors.

 In the instant case, Debtor and, to a greater extent, Debtor's attorney, knew that

---

**4.** *See also, In re Smith,* 105 B.R. 50 (Bankr. C.D.Cal.1989), in which the bankruptcy court comments upon the frustration with a system which is virtually powerless to stop the flood of petitions filed solely to stop a residential landlord from evicting a debtor from an apartment. Estimates of the percentage of total filings for this purpose in the Central District of California range from 25% to 40% of its nearly 80,000 cases filed annually.

by doing *nothing* to prosecute the Chapter 13 case properly, Debtor could reasonably expect to receive the protection of the stay until the confirmation hearing, which was scheduled for February 29, 1996.[5] Debtor listed no creditor on the mailing matrix other than Fleet.[6] Because Debtor failed to file Schedules or a plan and failed to attend the 341 Meeting, little or no information is known relevant to most of the *Kitchens* Factors. Logical inferences may be drawn based upon the information which *was* disclosed and based upon the absence of information that supports contrary inferences.

Evaluation of the relevant *Kitchens* Factors compels a conclusion that Debtor filed this case in bad faith. The timing of the filing of Debtor's two cases shows that Debtor's motivation for filing this bankruptcy petition was to deal with one specific problem— the imminent foreclosure sale of his residence. Debtor made no effort in this case to reorganize. Debtor filed none of the Schedules he was required to file, filed no Chapter 13 plan, failed to appear at the 341 Meeting, and made no payments to the Chapter 13 Trustee or to Fleet. Debtor included only one creditor on the mailing matrix—Fleet, so only Fleet received notice of the case. In short, Debtor utterly failed to carry out any of the duties of an honest Chapter 13 debtor. Debtor showed no change in circumstances between the filing of the First Case and the instant case. Finally, no illness, catastrophe or other excuse was alleged as reason for

Debtor's filing or failure to prosecute this case. Debtor's attorney unequivocally stated that no Schedules or plan were filed and Debtor failed to attend the 341 Meeting because Debtor was planning to dismiss this case as soon as the refinancing deal was consummated. Further, Debtor's attorney admitted that Debtor's failures to perform his duties under the Bankruptcy Code were on advice of Debtor's attorney.

This case was filed solely for the purpose of delaying and frustrating the exercise by Fleet of its legitimate remedies against Debtor's property. None of the excuses offered by Debtor's attorney is sufficient to rebut this conclusion. Debtor had no intention to reorganize, to fulfill his duties under the Bankruptcy Code or to submit himself and **all** his liabilities and assets to the jurisdiction of this court. Such conduct is an abuse of the bankruptcy system and constitutes bad faith.

■■■ The usual remedy for a bad faith filing is a dismissal pursuant to § 109(g), which works to prohibit the filing by a debtor of any case under Title 11 for a period of 180 days. 11 U.S.C. § 109(g). Such a dismissal is frequently and imprecisely referred to (only by bankruptcy practitioners) as a "dismissal with prejudice."[7] Further authority for such a dismissal arises under § 105(a), which empowers this court to issue *any* order, process or judgment which is necessary or appropriate to prevent abuse of the bank-

---

**5.** But for Debtor's voluntary dismissal February 26, 1996, this case probably would have been dismissed orally at the confirmation hearing. Thereafter, a written order and notice of the dismissal would have been mailed to Fleet, the only creditor listed on Debtor's mailing matrix. Only upon receipt of that notice, which may not occur for 7–10 days after the hearing, would Fleet be assured that the stay was lifted as a result of the dismissal so that it could proceed against Debtor.

**6.** A myth persists among potential and actual debtors appearing before this Court that certain debts may be selected to "bankrupt against" for the convenience of leaving other debts to be fully paid by the debtor or to "protect" the creditor from the necessity of fulfilling the duties of a creditor, such as filing a claim. The myth of selective creditor disclosure is untrue. Pursuant to 11 U.S.C. § 521 and Bankruptcy Rule 1007, a

debtor must file Schedules disclosing financial information fully, completely, accurately and honestly. A debtor may not pick and choose which assets and liabilities to disclose. *Poolquip–McNeme, Inc. v. Hubbard,* 96 B.R. 739 (Bankr.W.D.Tex.1989).

> The bankruptcy schedules and statement of affairs do not ask the debtor to make an assessment of what he thinks are important assets or debts. Debtor must, under oath, list all creditors and assets, as well as all transfers of property within the prior year.

*Superior National Bank v. Schroff,* 156 B.R. 250, 256 (Bankr.W.D.Mo.1993).

**7.** A true *dismissal with prejudice* would prevent the case from ever being again filed in the court wherein issued; in bankruptcy, the door to filings by a debtor is shut for only 180 days at a time. The entry of a true dismissal with prejudice is rare in the bankruptcy court.

ruptcy system. Section § 109(g) provides that a debtor is ineligible to file any case under Title 11 for 180 days if a prior case was dismissed for failure to abide by orders of the court or to appear before the court in proper prosecution of the case, **and** the failure was willful [8] or if the case was voluntarily dismissed after a motion for relief from stay was filed. In the instant case, Debtor's voluntary dismissal while Fleet's motion for relief from stay was pending in the First Cases renders Debtor ineligible to maintain the current case pursuant to § 109(g)(2). The other facts and circumstances shown in this case—the failure to file Schedules and a plan, coupled with failure to appear at the 341 Meeting and failure to make payments to the Chapter 13 Trustee—support a conclusion that Debtor's conduct was willful within the meaning of § 109(g)(1). Therefore, dismissal of this case under § 109(g) for a period of 180 days is appropriate.

### *Imposition of Sanctions*

■ Fleet seeks imposition of sanctions against Debtor and his attorney. Specifically, Fleet seeks imposition of monetary sanctions equal to the attorneys fees and costs incurred by Fleet as a result of this bad-faith filing. As authority for imposition of such sanctions, Fleet relies upon Bankruptcy Rule 9011.

Bankruptcy Rule 9011 governs the signing and verification of papers filed with the court and, therefore, provides authority for imposition of sanctions for bad-faith filings. *In re Bellew,* 71 B.R. 72 (Bankr.M.D.Fla.1987); *In re Smail,* 129 B.R. 676 (Bankr.M.D.Fla.1991). *See also, In re McBride Estates, Ltd.,* 154 B.R. 339 (Bankr.N.D.Fla.1993); *In re Coones Ranch, Inc.,* 7 F.3d 740 (8th Cir.1993); *In re R. and D. Group, Inc.,* 136 B.R. 163 (Bankr. S.D.Ohio 1992); *In re Seaspire, Inc.,* 56 B.R.

159 (Bankr.M.D.Fla.1985). Prior to the 1993 amendments to the Federal Rules of Civil Procedure ("FRCP"), Bankruptcy Rule 9011 and FRCP 11 (collectively "Rule 11") were analogous. Therefore, authorities construing pre–1993–FRCP 11 are applicable in a Bankruptcy Rule 9011 motion. *In re Alberto,* 119 B.R. 985 (Bankr.N.D.Ill.1990). *But see, Marsch v. Marsch,* 36 F.3d 825 (9th Cir. 1994).

■ The purpose of Rule 11 is to deter litigation abuse and unnecessary filings. *Anschutz Petroleum Marketing Corp. v. E.W. Saybolt & Co.,* 112 F.R.D. 355 (S.D.N.Y.1986). *See also, A Uniform Approach to Rule 11 Sanctions,* 97 Yale Law Journal 901 (1988). If a court determines that Rule 11 has been violated, sanctions must be imposed. Bankruptcy Rule 9011; *Raymond L. Asher, a Professional Corp. v. Film Ventures International, Inc.,* 89 B.R. 80 (9th Cir. BAP 1988). The type of sanction to be imposed is within the discretion of the court. *Donaldson v. Clark,* 819 F.2d 1551 (11th Cir.1987). Sanctions may be imposed against the individual who signed the pleading [9] or against the client represented by the signer. *Business Guides, Inc. v. Chromatic Comm. Enterprises, Inc.,* 498 U.S. 533, 111 S.Ct. 922, 112 L.Ed.2d 1140 (1991); *In re 1801 Restaurant, Inc.,* 40 B.R. 455 (Bankr. D.Md.1984). If the client is knowledgeable about bankruptcy law or shared responsibility with the attorney for litigation strategy, sanctions may be imposed upon the client and attorney jointly and severally. *Caldwell v. Farris (In re Rainbow Magazine, Inc.),* 136 B.R. 545 (9th Cir. BAP 1992).

■ Rule 11 contains two separate grounds for sanctions. *Robinson v. National Cash Register Co.,* 808 F.2d 1119 (5th Cir.

---

**8.** A dismissal under § 109(g) which results from willful conduct renders a debtor ineligible to file any bankruptcy case for 180 days. The finding of willfulness may be made in a prior case in connection with the dismissal of that case (in which circumstance that finding would be *res judicata* ). Alternatively, a finding of willfulness may be made in a subsequent case when the issue is raised in the context of whether the previous dismissal was based upon a debtor's willful conduct and, thus, renders the debtor ineligible under § 109(g) to proceed in the subse-

quent case. *Montgomery v. Ryan,* 37 F.3d 413 (8th Cir.1994).

**9.** *See, Pavelic & LeFlore v. Marvel Entertainment Group,* 493 U.S. 120, 110 S.Ct. 456, 107 L.Ed.2d 438 (1989), in which the Supreme Court held that Rule 11 authorizes the imposition of a sanction only against the individual attorney who signed the pleading and not against that individual's law firm.

1987). The first is whether the pleading is well-grounded in law and fact. *Id.* The second ground for imposition of Rule 11 sanctions is whether the pleading was filed for an improper purpose, such as harassment, delay, or increasing the expense of litigation. *Id.* As a result of the 1983 amendments to Rule 11, the established standard for imposing sanctions is an objective determination of whether a party's conduct was reasonable under the circumstances. *Donaldson v. Clark,* 819 F.2d 1551 (11th Cir.1987); *Eastway Construction Corp. v. City of New York,* 762 F.2d 243 (2d Cir.1985). A finding of subjective bad faith is unnecessary. *Robinson v. National Cash Register Co.,* 808 F.2d 1119 (5th Cir.1987).

■ The duty of reasonable inquiry imposed upon an attorney requires the attorney (1) to explain the requirement of full, complete, accurate, and honest disclosure of all information required of a debtor; (2) to ask probing and pertinent questions designed to elicit full, complete, accurate, and honest disclosure of all information required of a debtor; (3) to check the debtor's responses in the petition and Schedules to assure they are internally and externally consistent; (4) to demand of the debtor full, complete, accurate, and honest disclosure of all information required before the attorney signs and files the petition; and (5) to seek relief from the court in the event that the attorney learns that he or she may have been misled by a debtor. *In re Matthews,* 154 B.R. 673 (Bankr.W.D.Tex.1993); *In re Huerta,* 137 B.R. 356 (Bankr.C.D.Cal.1992). *See also, In re Dalton,* 95 B.R. 857 (Bankr.M.D.Ga.), *aff'd,* 101 B.R. 820 (M.D.Ga.1989); *In re*

*Rainwater,* 100 B.R. 615 (Bankr.M.D.Ga. 1989).

In the instant case, Debtor's attorney is an experienced bankruptcy attorney. Debtor's attorney knew or should have known of Debtor's prior filing. The circumstances of Debtor's filing so soon after dismissal in the previous case, Debtor's lack of performance in the previous case, and the pending foreclosure sale created for Debtor's attorney a duty of inquiry to determine whether the filing of this case was in good faith or merely for delay. Sometimes that inquiry is not possible until the case is filed, usually where the Debtor's attorney has little time to investigate while preparing a case for filing in a short period of time to protect the Debtor's rights under the Bankruptcy Code. However, Debtor's attorney actually knew within the first ten days after the case was filed that Debtor had no intent to reorganize. Debtor's attorney should have immediately attempted to persuade the debtor to voluntarily dismiss the case. If the debtor adamantly refused to dismiss, the attorney could have sought to withdraw **for cause.**[10] In this case, however, clearly Debtor's failure to fulfill his responsibilities as a debtor resulted from Debtor's attorney's advice.

Debtor's counsel should not choose to ignore the signs and symptoms of bad-faith filings and thus allow such cases to languish on the court's dockets, secure in the knowledge that eventually, someone—usually the Chapter 13 Trustee—will move to dismiss the case. Debtor's counsel clearly should not encourage or advise such conduct. A debtor's attorney has a professional duty to the Bar, to the court and to the integrity of the

---

**10.** DR 2–110 provides that an attorney must withdraw if
 (1) he knows or it is obvious that his client is bringing the legal action, conducting the defense, or asserting a position in the litigation, or is otherwise having steps taken for him, merely for the purpose of harassing or maliciously injuring any person;
 (2) he knows or it is obvious that his continued employment will result in violation of a Disciplinary Rule[.]
DR 2–110(B). DR 2–110(C) permits withdrawal if the client:
 (a) insists upon presenting a claim or defense that is not warranted under existing law and cannot be supported by good-faith argument

for an extension, modification, or reversal of existing law;
 (b) *personally seeks to pursue an illegal course* of conduct;
 (c) insists that the lawyer pursue a course of conduct that is illegal or that is prohibited under the Disciplinary Rules;
 (d) by other conduct renders it unreasonably difficult for the lawyer to carry out his employment effectively;
 (e) insists, in a matter not pending before a tribunal, that the lawyer engage in conduct that is contrary to the judgment and advice of the lawyer but not prohibited under the Disciplinary Rules[.]

legal system, which is higher than the duty to the client.[11] Subversion of the legal system ultimately enures to the disadvantage of all clients.

Using the automatic stay and the filing of the petition as a shield to buy time to negotiate a loan refinancing abuses the bankruptcy system. The harm which devolves is not limited to the affected creditor. By example and word of mouth, the "technique" spreads until it is no longer perceived by the Bar or by debtors as an abuse but as a permissible manipulation of the system. In the meantime, respect for the bankruptcy system, including attorneys who wish to assist honest debtors, deteriorates. When public respect for any part of the legal system falters, it harms everyone involved in the system.

■ In the instant case, Debtor's attorney facilitated, encouraged and advised his client's abuse of the bankruptcy system. Such conduct is sanctionable under Bankruptcy Rule 9011. Additionally, bankruptcy courts possess the inherent powers of a federal court to regulate its own docket to ensure that its process is not being abused. *Glatter v. Mroz,* 65 F.3d 1567 (11th Cir.1995); *Chambers v. NASCO, Inc.,* 501 U.S. 32, 43–44, 111 S.Ct. 2123, 2132–33, 115 L.Ed.2d 27 (1991). The amount of sanctions should be set at a level appropriate to deter future sanctionable conduct. *Colorado Chiropractic Council v. Porter Memorial Hospital,* 650 F.Supp. 231, 243 (D.Colo.1986).

In the instant case, payment to Fleet to reimburse its attorneys fees and costs for preparing and prosecuting the contested matters necessary to protect its interests (the motion for relief from stay, the objection to Debtor's dismissal and the motion for sanctions) is an appropriate sanction. Fleet provided evidence that the attorneys fees and costs for the motion for relief from stay were $350 plus the $60 filing fee, a total of $410. A reasonable attorney fee for the preparation and prosecution of the objection to Debtor's voluntary dismissal and the motion for sanctions is $500. Of the total sanctions, $910, Debtor will be directed to pay $400 and Debtor's attorney will be directed to pay $510. Accordingly, it is hereby

ORDERED that sanctions in the amount of $400 against Debtor and $510 against Debtor's attorney are imposed. The sanctions shall be paid in good funds to the attorney for Fleet, Lynn Wood, within 14 days of the date of entry of this order and a certificate of such payment shall be filed contemporaneously. It is further

ORDERED that this case is **DISMISSED** pursuant to 11 U.S.C. § 109(g). Debtor is barred from refiling any petition under Title 11 of the United States Code for a period of 180 days from the date of entry of this order. Jurisdiction to enforce this order is **reserved.**

The Clerk, U.S. Bankruptcy Court, is **directed to serve a copy of this order upon** Debtor, Debtor's attorney, attorney for Fleet, the Chapter 13 Trustee, and all creditors and parties in interest.

IT IS SO ORDERED.

---

11. Enunciation of this principle is attributed to Justice Anthony Kennedy, Speaker, "**Legal and** **Judicial Ethics,**" 11th Circuit Judicial Conference, May 7, 1990, Asheville, North Carolina.