**In the Matter of John Q. SMITH [1], Debtor.**

**No. 00–00000–JAC–13.**

United States Bankruptcy Court,
N.D. Alabama,
Northern Division.

Jan. 17, 2001.

1. Pursuant to a settlement agreement approved by the Court, the names of the debtor and debtor's counsel have been changed for publication purposes.

## MEMORANDUM OPINION

JACK CADDELL, Bankruptcy Judge.

By order entered September 26, 2000, the Court required debtor and debtor's counsel to show cause why the filing of debtor's petition did not violate Bankruptcy Rule 9011(b) as having been filed for an improper purpose and why the filing was not an abuse of process under Title 11, § 105(a).[2] The order set forth the stan-

---

**2.** FED. R. BANKR. P. 9011(c)(1)(B) provides as follows:

(B) *On Court's Initiative.* On its own initiative, the court may enter an order describing the specific conduct that appears to violate subdivision (b) and directing an attorney, law firm, or party to show cause why it has not violated subdivision (b) with respect thereto.

Title 11 § 105(a) provides that:

(a) The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appro-

dards for imposing sanctions and the Court's concerns as to whether sanctions should be imposed for what appeared to be flagrant misconduct. The order provided notice to debtor's counsel that possible sanctions included: (1) directives of a non-monetary nature including the suspension of the practice of law before the Bankruptcy Court for the Northern District of Alabama, Northern Division for a period of up to 60 months; (2) an order to pay a penalty into court; or (3) an order directing payment to the injured parties of some or all of the reasonable attorney's fees and other expenses incurred as a direct result of any violations. On the date set for hearing, the Court approved a settlement agreement pursuant to which debtor's counsel was required to immediately refund to the estate attorney's fees in the amount of $2,800.00 which he had received and to pay as sanctions $10,000.00 to the estate for distribution to creditors. It was further agreed that the Chapter 13 estate would remain open for the trustee to pursue certain avoidance actions.

## I FINDINGS OF FACT

On May 3, 2000, SunTrust Bank (hereinafter "the bank") filed a complaint against the debtor in the Circuit Court of Lauderdale County, Alabama seeking damages in the amount of $54,150.89 on two unsecured promissory notes. The bank filed a motion for summary judgment in the state court action and the same was set on August 15, 2000. The debtor did not file any response to the motion for summary judgment, but on August 14, 2000, filed for relief under Chapter 13 of the Bankruptcy Code. The automatic stay under § 362 was immediately entered and the state court action was stayed. The hearing on the motion for summary judgment was continued generally.

Four days after the Chapter 13 petition was filed, the debtor filed a "Notice of Dismissal" of the case under Title 11, § 1307(b). The Court, pursuant to Bankruptcy Rule 1017(f)(2), set the "Notice of Dismissal" for hearing on September 28, 2000.

Prior to the hearing on debtor's voluntary dismissal, the bank filed an objection to dismissal and a motion to convert the case to Chapter 7. The bank alleged as follows:

1. On October 22, 1999 the debtor's mother died intestate in Lauderdale County, Alabama, and the debtor and his brother filed for letters of administration of the estate in Lauderdale County, Alabama which said letters were granted in the Probate Court of Lauderdale County, Alabama.

2. The property of the probate estate consisted of, among other things, a house and 2.3 acres located in Lauderdale County, Alabama, the contents thereof and a 1988 Dodge Van.

3. Due to the death of his mother, under the laws of intestacy of the State of Alabama, the said debtor became the owner of an undivided ½ interest in his mother's real estate.

4. The debtor's petition for relief under the Bankruptcy Code is dated July 21, 2000; however, it was not filed until August 14, 2000 at 1:15 which was twenty-three hours and fifteen minutes prior to the date and time on which the bank would have been entitled to a judgment in its state court action.

5. On August 31, 2000, the debtor conveyed his undivided ½ interest in all or a portion of his mother's real estate to a third party. The total purchase price of the real estate was $48,200.

6. On August 31, 2000, the debtor transferred a substantial portion of the proceeds from the sale to his brother.

priate to enforce or implement court orders or rules, or to prevent an abuse of process.

7. The above stated conveyance and transfer were made at a time when the debtor's bankruptcy case was, and is at this date, still pending.

8. Due to the timing of the date of the petition, the filing of the petition and the date set for the hearing on the Bank's motion for summary judgment, the debtor invoked the protection of the bankruptcy court to enable him to convey assets which otherwise would have been subject to SunTrust's judgment lien.

In the debtor's response to the bank's motion to convert the debtor by counsel asserted that the case, pursuant to Title 11, § 1307(e) could not be converted because the debtor was a farmer. It was further asserted by both debtor and counsel that even though they were aware that under Alabama laws of intestacy, that the property vested in the debtor and his brother, that they some how believed that the property was in the name of the probate estate. They further alleged that under Alabama law, in the case of insolvency of the probate estate, that the property was subject to divestment. However, there was neither any indication of, nor was the probate estate insolvent. It was further admitted that the debtor had no defense to the bank's motion for summary judgment, but that the bankruptcy was filed to protect all of the debtor's unsecured creditors.

However, the primary debts scheduled by the debtor in his bankruptcy petition were owed to the bank. The debtor listed no secured creditors and the total debt listed to unsecured creditors was in the sum of $81,221.56 of which $59,000 was owed to the bank. There was only a total of four unsecured creditors listed, of which the bank was one.

The debtor in his statement of affairs listed his occupation as being a farmer. He projected monthly income in the amount of $1,650.00 from his farming operations, expenses in the amount of $794.13, and excess income in the amount of $855.87.

No where in the debtor's petition, schedules, or statement of affairs was it shown that the debtor was a co-administrator of his mother's estate in an action presently pending in the Probate Court for Lauderdale, County or that a proceeding was presently scheduled in that action whereby all of his mother's property was to be sold at public auction on August 31, 2000. No where in the petition did the debtor show that he owned any real property as part of his bankruptcy estate. In Schedule B, entitled "Personal Property," he listed a "one-half interest in the Estate" of his mother and listed the current market value of same as "unknown." In Schedule C, entitled "Property Claimed as Exempt," the debtor claimed the one-half interest in his mother's estate as exempt, but left the space entitled "Value of Claimed Exemption" blank.[3] Counsel for debtor argued the value was left blank because neither he nor the debtor knew the amount of the debtor's interest in his mother's estate. It is undisputed, however, that the debtor and his brother were co-administrators of their mother's estate and, pursuant to Alabama law, had filed an inventory of the property of the estate and posted a bond in twice the value of the property. This inventory had been done by the debtor in the pending administration and filed in the same under debtor's oath. Debtor failed to fully and honestly disclose this information in his petition, schedules and statement of affairs.

The petition did reveal, however, that counsel for debtor had been paid the sum of $2,800.00 in advance for services in connection with the bankruptcy. Debtor's counsel is a regular practicing bankruptcy attorney in our court. The ordinary fee

---

**3.** He cited ALA. CODE § 6–10–6 (Alabama's Code section allowing personal property exemption) as entitling him to said exemption.

for filing a Chapter 13 of this size is in the amount of $1,000.00. In addition to representing the debtor in bankruptcy, counsel also represented the debtor in the state court action.

After reviewing the objection filed by the bank and the debtor's petition and schedules, the Court issued the order to show cause and described therein the specific conduct that appeared to violate Rule 9011(b) and § 105(a) of the Code.[4] The order provided that if the matters set forth in the bank's objection were true, then it appeared that the debtor may have invoked the protection of the bankruptcy court to enable him to convey assets which otherwise would have been subject to the bank's judgment and to dispose of the property without accounting to his creditors. It appeared that debtor's counsel may have either known or after an inquiry reasonable under the circumstances should have known about the debtor's ownership interest in the property and apparently assisted the debtor in his endeavor to thwart or delay the bank in its litigation against the debtor in manipulation of the Bankruptcy Code so that the debtor could divest himself of assets, or that the attorney counseled and assisted the debtor in invoking the automatic stay to harass or to cause unnecessary delay or needless increase in the cost of litigation to the bank.

On September 26, 2000, counsel for the debtor filed a pleading entitled "Debtor's Response to Objection To Motion to Dismiss Chapter 13." Debtor's counsel filed the response on the same day that the Court entered the rule to show cause, but prior to receiving notice of same. The response reads in part as follows:

"1. Debtor filed for relief under Chapter 13 of the Bankruptcy Code on August 14, 2000. Debtor is a farmer who lives in Lauderdale County, Alabama.

2. On August 18, 2000 the Debtor filed a Notice of Dismissal of his Chapter 13. The debtor seeks to dismiss this case in order to deal with anticipated debts from the debtor's current farming operations so as to be able to obtain the best "fresh start" possible.

3. At the time that the debtor filed this case there was pending action in the Probate Court for Lauderdale County, Alabama to administer the property of the estate of the debtor's mother. The debtor is a co-adminis-

---

4. The procedure for imposing Rule 9011 sanctions on the court's own initiative is described in FED. R. BANKR. PROC. 9011(c) which states:

(c) **Sanctions**. If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation.

(1) *How Initiated*.

(B) *On Court's Initiative*. On its own initiative, the court may enter an order describing the conduct that appears to violate subdivision (b) and directing an attorney, law firm, or party to show cause why it has not violated subdivision (b) with respect thereto.

(2) *Nature of Sanction; Limitations*. A sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated. Subject to the limitations in subparagraphs (A) and (B), the sanction may consist of, or include, directives of a nonmonetary nature, an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation.

(A) Monetary sanctions, may not be awarded against a represented party for a violation of subdivision (b)(2).

(B) Monetary sanctions may not be awarded on the court's initiative unless the court issues its order to show cause before a voluntary dismissal or settlement of the claims made by or against the party which is, or whose attorneys are, to be sanctioned.

(3) *Order*. When imposing sanctions, the court shall describe the conduct determined to constitute a violation of this rule and explain the basis for the sanction imposed.

trator of this Estate along with his brother. Debtor along with his brother are the surviving heirs of their mother.

4. The probate estate consisted in part of certain real property located Florence, Alabama. This real property was sold at auction as part of the administration of the probate estate on August 31, 2000 for the sum of $48,200.00.

5. At closing, the closing attorney paid $18,557.20 in settlement charges which included paying off two mortgages owed by the debtor's deceased mother in the amount of $13,385.20, settlement charges, and the lawful claims which were filed against the probate estate. The balance of these proceeds, $17,748.10, was divided by the closing attorney between the debtor and his brother. Presumably, as part of the administration of the deceased's estate and to reflect the debtor's receipt of advancements, these proceeds were divided so that the debtor received $2,181.45 and his brother received $15,566.65.

\* \* \* \* \* \*

8. Section 1307(b) gives the debtor an absolute right to dismiss his Chapter 13 petition. *Barbieri v. RAJ Acquisition Corp. (In re Barbieri),* 199 F.3d 616 (2nd Cir.1999). This statute provides in pertinent part, that "[o]n request of the Debtor at any time, if the case has not been converted under section 706, 1112, or 1208 of this title, the court shall dismiss a case under this chapter." . . .

9. The debtor's absolute right to dismiss his petition is bolstered by § 301 of the Bankruptcy Code which provides that Chapter 13 is purely voluntary and may not be commenced involuntarily under § 303(a). For this reason alone, the Court cannot grant the request of Sun-

Trust to keep the debtor in Chapter 13. Such a result would allow a creditor to effectuate an involuntary Chapter 13 without the need to comply with all of the requirements of § 303. *Barbieri,* 199 F.3d at 620.

\* \* \* \* \* \*

12. Because the debtor has an absolute right to dismiss his case, this Court should not convert the case to one under Chapter 7 of the Bankruptcy Code. *Beatty v. Traub (In re Beatty),* 162 B.R. 853, 856 (9th Cir. BAP 1994). . . . Furthermore, the *Barbieri,* court found that to grant a creditor's motion to convert in the face of the debtor's pending motion to dismiss a Chapter 13 would allow the creditor to effectuate an involuntary petition without complying with the requirements of § 303(a) of the Bankruptcy Code. "Such result flies in the face of the voluntary nature of [Chapter 13] and circumvents the standards for an involuntary liquidation set forth in § 303." 199 F.3d at 620 (citations omitted).

13. Finally, § 1307(e) provides that a court may not convert a case under Chapter 13 to one under Chapter 7 if the debtor is a farmer, unless the debtor requests such conversion. In this case the debtor is a farmer as defined under the Bankruptcy Code. The debtor does not request that this case be converted, instead the debtor seeks to dismiss this action. Accordingly, the Court may not convert this case to one under Chapter 7."

Counsel for debtor further argued that this case was not filed for an improper or unnecessary purpose and that it was not an abuse of process to have filed the case because the debtor filed bankruptcy to "to treat all unsecured creditors" the same, i.e., so that all the creditors would share, rather than the bank getting it all. The

debtor explained the dismissal of his case only four days after it was filed, stating that he realized that because of the drought [which had been going on for months] that his farming effort was futile. The sad reality is, however, that the creditors got nothing-apparently the brother got most of it. After the mortgages and settlement charges were paid, $17,748.10 remained to be divided between debtor and his brother as the only surviving heirs. Instead, the debtor's brother received $15,566.65 and the debtor only received $2,181.45. (If this accounting is believed, the debtor paid his attorney $2,800.00 to net himself $2,181.00.) Despite the debtor's argument that he filed bankruptcy to treat all unsecured creditors the same nothing could be further from the truth.

On October 16, 2000, the bankruptcy administrator filed a motion to determine the reasonableness of the attorney's fee paid to debtor's counsel and requested a disgorgement of the fee. The bankruptcy administrator argued that the fee exceeded the usual and customary fee which would be awarded to counsel for representation of a Chapter 13 debtor in a similar size case. The motion further alleged that it appeared that the case was filed for an improper purpose and that any fee should be forfeited. In counsel's written response to the rule to show cause, counsel admits that the $2,800.00 fee exceeded the usual and customary fee, but represented that such amount was charged because the case was originally prepared as a Chapter 12 case. After the fee was paid, counsel stated that he became aware that Chapter 12 law lapsed on July 1, 2000.

## II CONCLUSIONS OF LAW

This case has required the Court to review its sanctioning powers under Bankruptcy Rule 9011 as well as the Court's statutory power to impose sanctions under § 105(a).[5] Rule 9011 provides as follows:

(a) Signature

Every petition, pleading, written motion, and other paper, except a list, schedule, or statement, or amendments thereto, shall be signed by a least one attorney of record in the attorney's individual name. A party who is not represented by an attorney shall sign all papers. Each paper shall state the signer's address and telephone number, if any. An unsigned paper shall be stricken unless omission of the signature is corrected promptly after being called to the attention of the attorney or party.

(b) Representations to the Court

By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed **after an inquiry reasonable under the circumstances,—**

> (1) it is not being presented for any **improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;** [emphasis added]
>
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a non-frivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
>
> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

---

5. See the case of *In re Collins,* 250 B.R. 645, 655–56 (Bankr.N.D.Ill.2000) for an excellent discussion of a courts sanctioning powers.

(4) the denials of factual contentions are warranted on the evidence of, if specifically so identified, are reasonably based on a lack of information or belief.

Section 105(a) states:

(a) The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, **or to prevent an abuse of process.** [emphasis added].

■ By placing his signature on the petition, schedules and statements, the debtor subjects himself to the tenor of Rule 9011(a) and (b). There is some uncertainty in the law as to whether Rule 9011(a) applies to debtor's counsel with reference to the representations made in debtor's statements and schedules because its language expressly excepts "a list, schedule, or statement, or amendments thereto." This Court has previously found that found that Rule 9011(b) as amended in 1997 clearly subjects debtor's counsel to the standards set forth in Rule 9011. In the case of *In re Kelley*, 255 B.R. 783 (Bankr.N.D.Ala.2000), the Court recognized that the argument could be made that because schedules and statements were omitted from the language of Rule 9011(a) that counsel may not be responsible for inaccuracies or misstatements in same. The Court found that by signing the bankruptcy petition and presenting the entire bankruptcy package to the Court, counsel subjected himself to the "limits, scope, and bounds of Rule 9011" because of the language found in paragraph (b) of

Rule 9011 which uses the terms "whether by submitting, filing, or later advocating." [6] In *Kelley,* the debtor had obtained a judgment for a personal injury against a third party. The debtor scheduled the judgment as exempt in the amount of $1 and stated that its value was "unknown." With a few simple questions the debtor's attorney could have easily ascertained the true value of the judgment, which was in fact several thousand dollars. The Court warned debtor's counsel that his failure to investigate the true value of the judgment was sanctionable under Rule 9011(b).

■ Section 362(a) of the Bankruptcy Code provides that a bankruptcy petition operates as a stay to all collection efforts, all foreclosure actions, and any other actions against the debtor that are not specifically excepted from the stay by subsection (b) of § 362. Rule 9011(c)(1)(A) includes a safe harbor provision that prohibits a party from filing a motion for Rule 9011 sanctions unless the violating party does not withdraw or correct the challenged paper under subsection (b) within 21 days of service.[7] The safe harbor provision contained in Rule 9011(c)(1)(A) does not apply to the filing of a bankruptcy petition.[8] The petition is excluded from the safe harbor provision of Rule 9011 because its filing has immediate serious consequences.[9] The invocation of the automatic stay is perhaps one of the most powerful safeguards in all the law. With the filing of a single piece of paper, the law imposes a broad sweeping and powerful injunction which carries with it great implications and provides for sanctions for its violation. The purpose of the automatic stay is to give the debtor breathing room. The automatic stay is not to be used as an abusive litigation tactic.

**6.** See the recent article, James Shepard, *Zealous Advocacy or Sanctionable Gamesmanship,* NORTON BANKR. L. ADVISOR, Dec. 2000, at 6.

**7.** FED. R. BANKR. PROC. 9011(c)(1)(A).

**8.** FED. R. BANKR. PROC. 9011(c)(1)(A).

**9.** *In re Collins,* 250 B.R. 645 (Bankr.N.D.Ill. 2000).

The case of *In re Robinson*, 198 B.R. 1017 (Bankr.N.D.Ga.1996), contained informative language where the automatic stay was involved as a litigation tactic instead of for a proper purpose. That case stated:

Filing even a skeletal petition secures the protection of the automatic stay of 11 U.S.C. § 326(a) for both the honest and the abusive debtor. The automatic stay serves to protect the honest debtor in desperate financial circumstances from creditor action and to provide a much-needed "breathing spell" to marshal resources and prepare to deal with creditors in a fair and orderly manner. The abusive debtor also obtains protection of the automatic stay but employs it to delay or thwart creditor action while refusing to fulfill the duties imposed by the Bankruptcy Code. The uses of the automatic stay as both a shield and a weapon are well-known to debtors' attorneys and to some debtors.

. . . .

Using the automatic stay and the filing of the petition as a shield to buy time to negotiate a loan refinancing abuses the bankruptcy system. The harm which devolves is not limited to the affected creditor. By example and word of mouth, the "technique" spreads until it is no longer perceived by the Bar or by debtors as an abuse but as a permissible manipulation of the system. In the meantime, respect for the bankruptcy system, including attorneys who wish to assist honest debtors, deteriorates. When public respect for any part of the legal system falters, it harms everyone involved in the system.[10]

Courts have also imposed Rule 9011 sanctions where the bankruptcy filing is motivated by the desire to delay a creditor from enforcing its rights in another court. In the case of *In re Collins*, 250 B.R. 645 (Bankr.N.D.Ill.2000), the debtor was involved in protracted litigation with another party, and when it appeared that the debtor had lost all hope of winning his case, he filed Chapter 7 bankruptcy. Although the debtor was worth millions of dollars and enjoyed a fabulous income as an insurance salesman, all his property was exempt except for about $75,000 which he proposed to pay to his adversary and discharge the balance of a $525,000 judgment against him. The *Collins* court, in dismissing the case for substantial abuse under § 707(a) observed:

Rule 11 creates duties to one's adversary and to the legal system, just as tort law creates duties to one's client. The duty to one's adversary is to avoid needless legal costs and delay. The duty to the legal system (that is, to litigants in other cases) is to avoid clogging the courts with paper that wastes judicial time and thus defers the disposition of other cases or, by leaving judges less time to resolve each case, or increases the rate of error. Rule 11 allows judges to husband their scarce energy for the claims of litigants with serious disputes needing resolution.[11]

In the instant case it appears that the debtor filed his petition in order to stop the state court from entering judgment in favor of the bank on a complaint to which the debtor admittedly had no viable defenses while the debtor effectuated the transfer of his only assets. The invocation of the automatic stay was used as a litigation tactic to stay the state court action, before the same could proceed to judgment. The Court has a nagging skepticism about counsel's defenses and explanations of what appears to be a deliberate plan to thwart the bank long enough for the debtor to dispose of his only assets. The circumstantial evidence is overwhelming. The bankruptcy filing just 23 hours in advance of the summary judgment setting; the dismissal just four days later (supposedly because the debtor realized

---

**10.** *In re Robinson*, 198 B.R. at 1024.

**11.** *In re Collins*, 250 B.R. at 660–61 (quoting *Mars Steel Corp. v. Continental Bank, N.A.*, 880 F.2d 928, 932 (7th Cir.1989)).

that the drought which had been going on for several months was detrimental to his farming operation); the fact that a Chapter 13 was filed at all since debtor had no secured debts and nothing to reorganize; the fact that a Chapter 13 could be dismissed at will and could not be converted to a Chapter 7 because the debtor was a farmer; the alleged fact that debtor and debtor's counsel did not know the value of the mother's estate, even though an accounting and inventory had been filed on the debtor's oath in the probate court; the alleged ignorance of debtor's counsel of Alabama law on real estate and intestacy law; the failure to disclose in the bankruptcy petition that an auction had been scheduled and was pending when the bankruptcy petition was filed; the fact that property was sold and debtor's brother got most of the profit; the debtor only realized $2,100.00 from the sale of his assets he inherited from his mother, but he paid his counsel $2,800.00 to file the bankruptcy petition. It is obvious that the automatic stay was invoked as a sword or a litigation tactic in the state court action instead of as a shield to give the debtor time to reorganize his affairs while treating his creditors fairly pursuant to the Bankruptcy Code. It is obvious that debtor's counsel was engaging in gamesmanship with the bank.

 Debtor's counsel had a duty to investigate the factual contentions claimed by debtor in his bankruptcy petition and schedules. By signing the petition and presenting the bankruptcy to the Court, counsel was certifying that the factual contentions claimed therein were supported by the evidence and were submitted for a legitimate purpose. They were not.

 The Court further finds that it has the power under Title 11, § 105(a) to impose sanctions. Section 105(a) sets forth as follows:

(a) The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, **or to prevent an abuse of process.** [emphasis added].

providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, **or to prevent an abuse of process.** [emphasis added].

Section 105(a) provides the Court with the power to protect the integrity of the bankruptcy system and to impose appropriate remedies for failure to make a reasonable inquiry under the appropriate circumstances such as involved in this case.[12] The vast majority of attorneys who practice before this Court have unquestionable integrity. Abuses like those here give bankruptcy a bad name when bankruptcy can least afford negative publicity. This Court will not tolerate this type of abuse.

The Court accepts the debtor's counsel's offer of settlement in this case—$10,000.00 payment of a sanction and refund of attorney's fees in the sum of $2,800.00 sum of which are to be paid into the Chapter 13 estate for the benefit of creditors. The debtor has further agreed to keep Chapter 13 open so the Chapter 13 trustee may pursue avoidance actions. Lastly, the Court warns debtor's counsel that he has come very close to more draconian action. Any further sanctionable conduct by him will result in his suspension of practice before this Court.[13]

---

**12.** *In re Kelley,* 255 B.R. 783 (Bankr.N.D.Ala. 2000).

**13.** *In re Computer Dynamics, Inc.,* 253 B.R. 693, 698 (E.D.Va.2000)(stating that bankrupt-

cy courts "possess 'the inherent authority to

disbar or suspend lawyers from practice' ").