### In re Donald Raye THOMAS, Sr. and Pamela Jean Pipkins–Thomas.

#### No. 03–43814–H2–13.

United States Bankruptcy Court,
S.D. Texas,
Houston Division.

Feb. 13, 2006.

Jeffrey Boyd Lucas, Crowson & Lucas LLP, Houston, TX, for Donald Raye Thomas, Sr.

*MEMORANDUM FINDINGS OF FACT AND CONCLUSIONS OF LAW REGARDING ORDER VACATING CONFIRMATION OF CHAPTER 13 PLAN (Doc. # 35) AND IMPOSING SANCTIONS UNDER RULE 9011*

WESLEY W. STEEN, Bankruptcy Judge.

With the petition initiating this bankruptcy case, Debtors (through Counsel) filed a list of creditors that included the United States, Internal Revenue Service (IRS), but stated the IRS claim as "$0.00" even though Debtors and Counsel knew that the claim exceeded $30,000. Shortly thereafter, Debtors, through Counsel, filed bankruptcy schedules that listed the IRS claim at $20,000. During the course of the case, the incorrect statement of the IRS claim was repeated and exaggerated, concluding in Debtors' counsel, David Barry ("Counsel") filing a proof of claim that represented the claim to be $5,000. After two hearings to determine the facts and to give Counsel an opportunity to explain his conduct and that of his clients in this case, the Court concludes that the misrepresentations were intentional and constituted a fraud on the Court. For reasons set forth below, and by separate written order issued this date, the Court vacates the order confirming this chapter 13 plan and sanctions Debtor's counsel.

## FACTS

1. On or before *April 15, 2002*–Debtors filed their individual federal income tax return for 2001.
 The tax return showed that

the Debtors owed $4,661.00 [1]

2. *February, 2003*–Debtors filed their 2002 tax return, which indicated that a refund was due. That refund was set off and that offset, together with other payments that Debtors made after filing their 2001 return, paid the tax liability shown on the 2001 tax return.[2] Therefore, as of February 2003, the liability shown on the Debtors' 2001 tax return had been paid in full. Counsel stated that he was not aware of this fact.[3]

3. *May, 2003*–the IRS advised Debtors that their income tax return had been selected for audit.[4] The IRS questioned whether certain deductions taken by Debtors on their 2001 return, including charitable deductions and deductions on Schedule C (Profit or Loss from Business), were properly allowable; the IRS asked for substantiation of those deductions. The notice scheduled the audit for June 2, 2003 and offered to reschedule if that time was inconvenient. Debtors did not attend the audit or reschedule.[5]

4. *June 2, 2003*-the IRS mailed Debtors a letter enclosing IRS Form 4549 setting forth the adjustments that the IRS was proposing to make to their return. The IRS disallowed deductions for which Debtors had not provided support, disallowed double deduction of mortgage interest, and imposed penalties for negligent tax return preparation. The total amount due was shown as $34,812.98. A copy of the Examination Report can be found at IRS Motion for Summary Judgment, docket # 94, Government Exhibit 7.[6] The letter explained procedures for installment payment if Debtors were unable to pay in full immediately. It also explained procedures by which Debtors could supply additional documentation or appeal the examination changes within the IRS.[7] Debtors did not respond to that letter.

5. *June 23, 2003*-the IRS sent Debtors another letter requesting documentation for the deductions on their

---

1. IRS Motion for Summary Judgment, Government Exhibit 7, docket # 94; *see also* Joint Pre Trial Statement, Admissions of Facts, paragraph J, docket # 64.

2. Transcript of hearing, November 1, 2005, page 21, line 1 to page 24, line 4; *see also* IRS Motion for Summary Judgement, docket # 94, Government Exhibit 2.

3. Transcript of hearing, November 1, 2005, page 24, lines 2–4.

4. Joint Pre Trial Statement, Admissions of Facts, paragraph K, docket # 64. *See also* IRS Motion for Summary Judgment, docket # 94, Government Exhibit 4.

5. Transcript of hearing, May 18, 2005, page 22 lines 11 through 20 and IRS Motion for Summary Judgment, docket # 94, Exhibits 3, 7. Debtors contend that an audit was never conducted. The Debtors' contention has no merit. Debtors' argument is in part linguistic. The IRS advises that "IRS audit" is a familiar, colloquial, term but not a term of art. The proper terminology is "examination": United States' Response to Debtors' Brief in Response to Case Management Order, docket # 115, footnote 2, 26 U.S.C. § 7602. Counsel contends that because Debtors did not show up for the "examination", then there was no audit: Transcript of hearing, November 1, 2005, page 17 lines 8 through 11. Counsel is a CPA as well as an attorney. The argument that there was "no audit" is disingenuous at best.

6. That exhibit is a copy of the September 4 IRS Statutory Notice of Deficiency, but attaches a copy of the June 2 notice of Income Tax Proposed changes dated June 2, 2003.

7. IRS Motion for Summary Judgment, docket # 94, Government Exhibit 5.

2001 tax return and warning that collection action would result if Debtors failed to respond to the examiner.[8] Debtors did not respond to that letter.

6. *September 4, 2003* [9]–Because Debtors did not respond to the IRS and did not submit any information or argument to the IRS in support of the deductions, the IRS issued a Statutory Notice of Deficiency to the Debtors for tax year 2001 showing

| | |
|---|---|
| Additional Taxes | $27,109.00 |
| Penalties | $ 5,421.80 |
| TOTAL | $32,530.80 |

Debtors admit that they received the Notice of Deficiency and made the decision not to contest the deficiency in the tax court.[10]

7. *October 1, 2003*–Debtors through Counsel, filed a petition commencing this case under chapter 13 of the Bankruptcy Code. In the space in the Official Form for "Numbered List of Creditors," [11] Debtors listed the IRS as a creditor, but stated that the "amount of claim" was "$0.00."

8. *October 20, 2003*–Debtors through Counsel, filed their sworn bankruptcy schedules.[12] The schedules listed a priority unsecured IRS claim of $ 20,000.00. On the official form there is a column where a debtor may insert a "√" to indicate that a claim is disputed, unliquidated, or contingent.[13] Debtors did *not* indicate that the IRS claim was disputed, liquidated, or contingent. Nowhere in Debtors' schedules do Debtors disclose that the IRS claimed $32,530.80 in its Statutory Notice of Deficiency.

9. The $20,000 that Debtors disclosed in their schedules as an IRS claim was an arbitrary number chosen by Counsel. It has no basis in fact or in law. Counsel told the Court that he "averaged" the tax liability of $4,661 as shown on Debtors' tax return with the total amount claimed

---

8. *Id.*, Exhibit G.

9. IRS Motion for Summary Judgment, docket # 94, Government Exhibit 7. The Debtors and the IRS initially stipulated that the notice of deficiency was issued December 18, 2003. However, in a subsequent hearing the IRS noted that this stipulation was inaccurate. The December 18 date was the deadline for filing a petition in the tax court to determine the tax in that forum. In subsequent hearings, the Debtors and Counsel agree with the IRS correction. A copy of the document is in the record as indicated.

10. Debtors' Brief in Response to Order Setting Status conference & Scheduling Conference, docket # 76, paragraph 35. *See also* Joint Pre Trial Statement, Admissions of Facts, paragraph L, docket # 64.

11. Docket # 1.

12. Docket # 9.

13. As indicated in the text, Debtors in this case filed multiple sets of amended schedules. In none of them do Debtors indicate that the IRS claim is disputed, contingent, or unliquidated. In various memoranda and oral argument, the Debtors have contended that these columns need only be checked in chapter 11 cases. Debtors and their Counsel are incorrect. Bankruptcy schedules are mandatory statements by debtors made under penalty of perjury and apply to all cases. The *consequences* for the *creditor* differ in chapter 11 because in chapter 11 the creditor need not file a proof of claim if the debt is listed as undisputed, liquidated, and not contingent. But a debtor's obligation to file truthful schedules is the same under chapters 7, 11 and 13. Bankruptcy Code § 521, Official Forms 6–Decl. Forms are filed under penalty of perjury. *In re Armstrong*, 320 B.R. 97, 107

by the IRS ($32,530.80) and rounded off the calculation to $20,000.[14]

10. *November 26, 2003*-on behalf of Debtors, Counsel filed an amended chapter 13 plan summary that proposed to pay the IRS $20,000.[15]

11. *December 16, 2003*-on behalf of Debtors, Counsel filed an amended bankruptcy schedule[16] that changed their representation concerning the amount of the IRS claim; it reduced the claim from $20,000 to $5,000. No event or transaction had occurred between October 20 and December 16 that would have affected Debtors' tax liability. The amended schedule was not signed by Debtors as the rules require. In addition, Counsel filed on behalf of Debtors an amended chapter 13 plan summary that proposed to pay the IRS $5,000. The $5,000 figure has no basis in fact or in law.

12. *January 13, 2004*-Debtors' chapter 13 plan was confirmed.[17] An IRS representative was present at the confirmation hearing but made no objection.[18]

13. *February 2, 2004*-Debtors' Counsel signed and on February 3 Counsel filed a proof of claim on behalf of the IRS.[19] The proof of claim represented the IRS claim to be:

Unsecured Priority Claim $ 5,000.00

Counsel intentionally omitted from the proof of claim any details about the tax liability, such as the tax year and type of tax involved. The purpose of omitting these details was to try to prevent the IRS from "amending" the proof of claim to show the amount that the IRS had actually claimed in its Statutory Notice of Deficiency.[20] When the proof of claim was filed, the Debtors and Counsel were aware of the Statutory Notice of Deficiency and were not aware of any other IRS claim.[21]

In the hearing on May 18 (page 6, lines 6–8), Counsel stated that he filed the $5,000 claim to match his client's tax return "... because that's the amount my client was alleging he owed the IRS." That assertion is obviously incorrect because the tax return showed a liability of $4,661, not $5,000. In addition, the tax shown on the tax return had been paid as of February 2003. The IRS claim in this bankruptcy case is not related to the liability shown on the Debtors' 2001 tax return. The IRS claim in this cases arises from an audit and disallowance of deductions that occurred after the $4,661 liability was paid. Counsel never provided the Court with any reasonable explanation for the $5,000 figure.

(Bankr.N.D.Tex.2005), *In re Solomon*, 277 B.R. 706, 710 (Bankr.E.D.Tex.2002).

14. Transcript of hearing, May 18, 2005, page 3 line 16 through page 4 line 10. Counsel's methodology is especially arbitrary since the IRS claim is unrelated to the $4,661 liability shown on the return and because the $4,661 tax liability had already been paid. Counsel asserts that he was unaware that this sum had been paid. Transcript of hearing, November 1, 2005, page 24, lines 2–4.

15. Docket # 23.

16. Docket # 30.

17. Docket # 35.

18. Joint Pre Trial Statement, Admissions of Facts, paragraph F, docket # 64.

19. Claim # 17.

20. Transcript of hearing, May 18, 2005, page 8 line 21—22.

21. Joint Pre Trial Statement, Admissions of Facts, paragraphs M, N, docket # 64. *See*

14. *March 30, 2004*-was the deadline for filing government claims.[22]

15. *December 21, 2004*-the IRS filed a proof of claim [23] showing

| | |
|---|---|
| Unsecured nonpriority claim | $ 5,524.47 |
| Unsecured priority claim | $29,724.20 |
| TOTAL | $35,248.67 |

16. *December 23, 2004*-Debtors filed docket # 49, objecting to the IRS claims, alleging that the claim was not filed timely and that the amount of the claim was not correct. At the request of the parties, the Court bifurcated that adjudication. The Court first addressed whether the IRS proof of claim could be treated as an amendment of the proof of claim filed for them by Counsel and the Court deferred adjudication of the amount of the claim. Applying published Fifth Circuit authority, the Court held that the IRS claim would be treated as an amendment of the proof of claim filed by Counsel.[24]

17. *May 12, 2005*-the Debtors filed an amended objection to the IRS proof of claim.[25] The objection states that "Debtor (sic) disagrees with the amount alleged."

18. *August 17, 2005*-the IRS filed a motion for summary judgment regarding the remaining issue, *i.e.* the correct amount of the IRS claim.[26] Debtors did not file a response to the motion for summary judgment.

19. *September 9, 2005*-the parties submitted a form of Agreed Order, establishing that the IRS claim is $34,822.67, which includes $5,453.47 as an unsecured nonpriority claim and $29,369.20 as an unsecured priority claim. The Court has issued that order.[27]

20. Debtors and Counsel have never denied receiving all of the IRS correspondence and the IRS proposed tax adjustments, and has never denied having that information prior to filing this case.

The Court has held two hearings [28] concerning whether the Debtors and Counsel intentionally filed vague, misleading, and outright false documents. The Court deferred adjudication at the first hearing because Counsel vigorously argued that the IRS claim was baseless. But, Debtors and Counsel then declined to offer any evidence in support of their objection and consented to an order establishing the IRS claim essentially as set out in the statutory Notice of Deficiency.

The Court therefore held a final hearing on November 1, 2005, after notice to the Debtors and to Counsel to allow Counsel to explain his, and his client's, conduct. In addition to considering sanctions under FRBP 9011,[29] the Court gave notice that it would address whether to vacate the confirmation order as having been obtained by a fraud on the Court.

---

*also* Transcript of hearing, March 28, 2005, page 24 line 23 to page 25, line 8.

22. Joint Pre Trial Statement, Admissions of Facts, paragraph D, docket # 64.

23. Claim # 18.

24. The written opinion can be found at docket # 68.

25. Docket # 75.

26. Docket # 94.

27. Docket # 98.

28. *See* Courtroom Minutes for May 18, 2005 (docket # 80) and June 27, 2005 (docket # 89).

29. Notices required by FRBP 9011(c)(1)(B) had been given for the prior two hearings and were reiterated in the order setting the November 1 hearing.

At that hearing, Counsel and Debtors declined to submit evidence.[30] And even more important, although the Court asked twice, Counsel declined to recognize a duty of candor to the Court and recognized only a duty to represent his client aggressively.[31]

## CONCLUSIONS

### 1. *Documents Filed Without Evidentiary Support In Violation of FRBP 9011*

After extended consideration of Counsel's statements at all hearings, and after extended review of the docket of this case, the Court concludes that Debtors' bankruptcy schedules (prepared by Counsel, signed by Debtors under penalty of perjury, and filed into the record by Counsel) and the proof of claim prepared, signed, and filed by Counsel on behalf of the IRS were intentional false statements. The Court further concludes that the bankruptcy petition and chapter 13 plans were filed for an improper purpose: to mislead the Court and the chapter 13 trustee to discharge an IRS claim without payment of the amount required by bankruptcy law, to avoid proper adjudication of that claim, and to delay and hinder establishment of the correct IRS claim when Debtors and Counsel had no factual or legal basis for

confirmation of the chapter 13 plan or for objection to the IRS claim [32].

Counsel prepared, and Debtors sequentially signed under penalty of perjury, documents filed into the record that represented the IRS claim to be "$0.00", $20,000, and $5,000. These schedules (and corresponding chapter 13 plans) were filed with full knowledge that the IRS claim was in excess of $30,000. There is no basis in fact for the "$0.00" figure, the $20,000 figure or the $5,000 figure. At all relevant times, both the Debtors and Counsel knew that the documents falsely represented the amount that the IRS asserted to be its claim.

Counsel had asserted that he used an arbitrary $20,000 figure in the schedules and initial plan ". . . just to say there's a dispute." [33] That assertion is not legally sound and is not credible. Counsel is an experienced bankruptcy attorney who has filed over 5,000 bankruptcy cases.[34] Contested matters are initiated in bankruptcy court by motions or objections; adversary proceedings are initiated by complaint and summons. Bankruptcy schedules and proofs of claim do not give notice of a dispute; they serve a different purpose. They inform the Court and parties in interest of the Debtors' financial condition. If Debtors genuinely disputed the IRS

---

**30.** Transcript of hearing, November 1, 2005, page 12, lines 3–11, page 34, lines 13–23, page 35, lines 13–14, page 36, lines 2–6.

**31.** Transcript of hearing, November 1, 2005, page 34, line 24 to page 25, line 12.

**32.** In the objection to claim and the amended objection to claim, Counsel contended that the IRS claim was wrong. At the hearing on May 18, Counsel asserted that he had engaged a CPA to review his clients' documents and to determine "how far apart" Debtors and the IRS were. (Transcript of hearing, May 18, 2005, page 24, lines 9–15, page 18, lines 17–24). Obviously, prior to filing the objection

Counsel had not determined that the objection had evidentiary support and thereby satisfied FRBP 9011. In fact, in answers to IRS interrogatories, Counsel stated that the evidentiary basis for the objection (i.e. the documents supporting the disallowed deductions) had been destroyed in 2002, over two years before the objection to claim was filed: IRS Motion for Summary Judgment, docket # 94, Government Exhibit 10.

**33.** *See* Transcript of hearing, May 18, 2005, page 3, line 16 through page 4, line 13.

**34.** Transcript of hearing, November 1, 2005, page 27 lines 3–6.

Statutory Notice of Deficiency, Debtors could have correctly disclosed the IRS claim and simply checked the "disputed" column on the bankruptcy schedules. They did not do that. Instead, they listed amounts that have no basis in fact. Because the Debtors did not file any response to the IRS motion for summary judgment but rather simply conceded the issue at the deadline for a response, because Counsel concedes that the $20,000 figure was an arbitrary number without basis in fact, and because the records had been destroyed 2 years prior to the objection and Counsel had not (prior to filing the objection to claim) examined "how far apart" his clients and the IRS were, the Court can only conclude that there was never any *bona fide* dispute about the amount of the IRS claim.[35]

### 2. *Plan Filed Contrary to Requirements of Law*

Bankruptcy Code § 1322(a)(2) sets out certain requirements for a chapter 13 bankruptcy plan. It provides:

The plan shall ... provide for the full payment ... of all claims entitled to priority under section 507 ...

Bankruptcy Code § 1325(a)(1) provides:
... [T]he court shall confirm a plan if ... the plan complies with the provisions of this chapter.

Considering all the facts and circumstances, the Court concludes that Debtors and Counsel knew that the plan did not meet statutory requirements. Although the Debtors monthly income (after payroll deduction) is $5,528[36] their schedules show necessary living expenses of $4,691 per month, resulting in disposable income of only $837 per month that can be devoted to a chapter 13 plan.[37] The Debtors' chapter 13 plan proposes to pay $41,474 of secured debt, leaving only about $10,000 that could be dedicated to unsecured claims (which would include federal income taxes).[38] Because the IRS claim is more than $10,000, the plan should not have been be confirmed. If the correct amount of the IRS priority claim had been included in the plan document as § 1322 requires, the plan would not have been confirmed.[39]

---

35. *See* footnote 32.

36. Bankruptcy Schedule I, docket # 30.

37. Bankruptcy Schedule J, docket # 30.

38. Amended Chapter 13 Plan Summary, docket # 30.

39. Bankruptcy Code § 1322(a)(2) requires a chapter 13 plan to provide for full payment of claims entitled to priority treatment, such as the IRS claim. Section 1325(a)(1) precludes the Court from confirming a chapter 13 plan that does not satisfy that requirement. To meet the statutory requirements, therefore, the Debtors should have filed a plan that proposed to pay to the IRS the full amount of its claim as stated in the IRS Statutory Notice of Deficiency: $32,530.80 (the "IRS Notice of Deficiency Claim") or the amount of the claim as adjudicated by the Court if a *bona fide* contested matter were initiated. Actually, there were several plans proposed by the Debtors. The initial plan (docket # 10) proposed to pay $49,680 to the trustee (net of trustee's commission), from which the Trustee was to pay $24,974 in secured debt. Thus only $24,746 would be available for the IRS claim. The second plan (docket # 23) proposed to pay $65,880 to the trustee (net of trustee's commission) from which the Trustee was to pay $40,092 to secured creditors leaving $25,788. Again, obviously, there is not enough remaining for the IRS Notice of Deficiency Claim. The third plan (docket # 26) proposed to pay $65,880 to the trustee (net of trustee's commission) from which the Trustee was to pay $41,240 to secured creditors. The remainder $24,640 is not enough for the IRS Notice of Deficiency Claim. The fourth plan (docket # 30) proposed to pay $51,345 to the trustee (net of trustee's commission) from which the Trustee was to pay $41,475 to secured creditors. This is the plan that reduced the proposed payment for the IRS from $20,000 to $5,000. Debtors' payment to the

## CONCLUSIONS OF LAW

1. *Authority to Vacate the Confirmation Order.*

▮ Debtors' counsel argues that the Court cannot vacate the order confirming the chapter 13 plan because (1) no party in interest has asked the Court to do so, and (2) the confirmation order was issued more than 180 days ago.

Bankruptcy Code § 1330(a) provides:

On request of a party in interest at any time within 180 days after the date of the entry of an order of confirmation under section 1325 of this title, and after notice and a hearing, the court may revoke such order if such order was procured by fraud.

Bankruptcy Code § 105(a) provides:

The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, *sua sponte*, taking any action or making any determination necessary or appropriate to . . . prevent an abuse of process.

There is no time limit in § 105 for the court to issue an appropriate order to prevent an abuse of process.

The course of conduct in this case constitutes a material abuse of the privileges of access to the federal courts and the availability of a bankruptcy discharge.

It would be bad enough if Debtors and Counsel merely maintained that the Court was impotent to address false statements made to the Court in their bankruptcy schedules and chapter 13 plan.[40] But Debtors and Counsel go further. Counsel stated that:

I was trying to obviously get jurisdiction over [the IRS] to make sure something did not survive the Chapter 13 discharge.[41]

In that quote, Counsel must be referring to Bankruptcy Code § 1328(a) which mandates that the Court issue a discharge of all debts provided for in the plan when the Debtor completes all payments called for in the chapter 13 plan. By filing intentionally false schedules and an intentionally false proof of claim, and by providing for payment of a small amount to the IRS, Counsel was attempting to confirm a plan that should not have been confirmed and thereby to obtain a discharge of the debt to which the Debtors should not be discharged.

The Court is now aware of the false statements. It is simply inconceivable that the Court, after becoming aware of the false representations, would be required to issue an order *at some point in the future* that discharges the Debtors (or purports to discharge them) from debts about which they lied to the Court. To prevent that abuse of process, the Court concludes that it must issue an order under § 105(a) to vacate the plan confirmation order.

In addition to authority under § 105(a), the Court finds authority to vacate the confirmation order in the inherent authority of a court to redress a fraud on the Court. In *Federal Practice and Proce-*

---

Trustee was reduced by about $14,400 and the payment to the IRS was reduced by $15,000, to $5,000. Obviously, this is not enough remaining to pay the IRS Notice of Deficiency Claim.

**40.** Debtors' Brief in Response to Order Setting Status Conference and Scheduling Conference, docket # 76, paragraphs 27 to 31.

**41.** Transcript of hearing, May 18, 2006, page 8, lines 3–5. *See also* transcript of hearing, November 1, 2005, lines 6–8.

*dure,* Wright & Miller, § 2870, the author states:

> The power to vacate a judgment that has been obtained by fraud upon the court is inherent in courts ... [Quoting from *Hazel–Atlas Glass Company v. Hartford–Empire Company,* 322 U.S. 238, 64 S.Ct. 997, 88 L.Ed. 1250 (1944) the treatise continues] ... "[T]ampering with the administration of justice in the manner indisputably shown here involves far more than an injury to a single litigant. It is a wrong against the institutions set up to protect and safeguard the public, institutions in which fraud cannot complacently be tolerated consistently with the good order of society" ... The Court also held that it need not decide to what extent the [tampered data] had impressed the judges who voted to uphold the patent nor was it relevant whether the [tampered data was] true ... [T]he court may proceed on its own motion ... There is no time limit on setting aside a judgment on this ground ...

Because this order vacating the confirmation order is issued under § 105(a) and under the Court's inherent authority to redress a fraud on the court, there is no time limit on the Court's decision and there is no requirement that a party in interest request that relief.

## 2. *Reliance on False Representation of Essential Facts is Implicit*

 In *Nikoloutsos v. Nikoloutsos (In the Matter of Nikoloutsos),* 199 F.3d 233 (5th Cir.2000) a state court awarded a $600,000 judgment against the debtor for malicious assault on his wife. Three days later, the debtor filed a chapter 7 bankruptcy case. The debtor then realized that the debt was not dischargeable in chapter 7, so the debtor moved to convert to chapter 13. Had the bankruptcy court realized that the debtor owed debts that exceeded the limits applicable to chapter 13 cases, the bankruptcy judge should not have issued an order converting the case. But the debtor did not list the debt correctly; the debtor listed Mrs. Nikoloutsos' claim at "$0.00." [42] In an appeal of the bankruptcy judge's denial of Mrs. Nikoloutsos' motion to revoke the confirmation order, the Court of Appeals for the Fifth Circuit reversed. Although the decision deals with fraud under § 1330 and not "fraud on the court" the decision provides guidance concerning whether the Court must explicitly rely on the fraudulent information in a debtor's schedules.

Under 11 U.S.C. § 1330(a), to prove that a debtor obtained a confirmation of his plan by fraud, the creditor must prove: (1) that the debtor made a representation regarding his compliance with § 1330(a) [43] which was materially false; (2) that the representation was either known by the debtor to be false, or was made without belief in its truth, or was made with reckless disregard for the truth; (3) that the representation was made to induce the court to rely upon it; (4) that the court did rely upon it; and (5) that as a consequence of such reliance the court entered confirmation. 199 F.3d 233, 238.

The case at bar clearly meets the first three parts of the test because in this case, the Debtors and Counsel intentionally made a materially false statement, and the

---

**42.** The bankruptcy judge may have been aware that the debt exceeded the chapter 13 limits because the judge granted relief from the stay to allow the state court to assess punitive damages.

**43.** (Sic.) This appears to be a typographical error; perhaps the section reference should be § 1322 or § 1325.

representation was made to induce the court to rely upon it. The third and fourth elements are more problematic because there is no explicit reliance on the false statements. But in that regard, the Court of Appeals for the Fifth Circuit indicates that the reliance may be "implicit":

> The information provided by a debtor in the several petition documents should not only be complete, but truthful so that the court and other parties in interest can reasonably rely upon the data contained therein. By listing the debt to Mrs. Nikoloutsos as $0.00 in the original petition and later failing to amend the petition, Mr. Nikoloutsos made a materially false representation which was either known by him to be false or made with reckless disregard for the truth. It is clear from the facts of this case, which arise from an attempt by Mr. Niloloutsos to avoid the judgment against him, that Mr. Nikoloutsos provided the materially false information with the intent of inducing the court to rely upon it. Although the bankruptcy court was aware of the state court judgment before confirmation, the court must have relied on the $0.00 figure provided by Mr. Nikoloutsos because otherwise his debt would have exceeded the $250,000 limit established by § 109(e) and been non-dischargeable under either Chapter 7 or Chapter 13. As a consequence of the bankruptcy court's *implicit reliance* on the incorrect schedules, it entered the confirmation. *Id.* (emphasis added)

As noted above, Bankruptcy Code § 1322 requires a debtor to provide in his plan for payment of all priority claims. In this case, the Debtors did indeed provide for priority claims but did so by filing schedules that falsely stated the amount of the claims.

The Bankruptcy Code provides that the bankruptcy judge is to confirm the plan only if the plan complies with the provisions of (among others) § 1322.[44] If the bankruptcy schedules had been truthfully filled out and filed, the chapter 13 trustee should have objected to confirmation. Or the Court should have on its own authority questioned confirmation. The Court implicitly relied on Counsel's and on Debtors' materially false representations.

3. *Filing a Petition, Chapter 13 Plan and False Schedules Is Grounds for Sanctions; Filing False Schedules and a False Proof of Claim In the Hope That the Creditor Will Not Respond is Sanctionable.*

■ Rule 9011(b) of the Federal Rules of Bankruptcy Procedure (FRBP) provides:

> By presenting to the court (whether by signing, filing, submitting or later advocating) a petition, pleading, written motion, or other paper, an attorney ... is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,—
>
> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of exiting law or the establishment of new law;
>
> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are like-

---

44. Bankruptcy Code § 1325.

ly to have evidentiary support after a reasonable opportunity for further investigation or discovery ...

Counsel argues that he filed the false statements of the IRS claim as a litigation strategy. He contends that if the IRS did not timely respond, it is bound by plan confirmation. Even if that were true, the conduct is sanctionable.

In *Mark Burroughs*, case number 98–42443 United States Bankruptcy Court, Southern District of Texas, the debtor filed schedules indicating that he qualified for relief under chapter 13, but in reality Mr. Burroughs' debt exceeded the limits for eligibility to file a chapter 13 case. In addition, Mr. Burroughs did not have regular income to fund a chapter 13 plan. The undersigned bankruptcy judge imposed sanctions against both the debtor and against counsel for filing the petition and schedules. On appeal to the district court, Judge Lake affirmed, Civil Action No. 99–2278, United States District Court, Southern District of Texas.

Counsel in *Burroughs* argued that " ... debtor's attorneys have an obligation to try to take advantage of Chapter 13's streamlined process on the expectation that no objection to the eligibility limit will be raised." [45] The district court rejected that argument. Further, the district court concluded that " ... based on Jones' legal argument that a debtor's attorney should try to proceed under Chapter 13 in hopes that no creditor would object and that absent objection the Chapter 13 petition would be confirmed and the § 109(e) debt limit waived, the bankruptcy court could reasonably have inferred that Burroughs

and Jones intentionally filed Burroughs' Chapter 13 petition knowing that Burroughs was not eligible to be a Chapter 13 debtor." [46] The Court of Appeals affirmed in an unpublished opinion found at 240 F.3d 1074, 2000 WL 1835304 (Nov. 30, 2000). The Fifth Circuit *per curiam* opinion states: " ... [W]e affirm essentially for the same reasons set forth by the district court it its thorough and well-reasoned opinion."

The Fifth Circuit has clearly indicated its disapproval of trial tactics that seek default by ambush. [47] In the *Kolstad* case, the Fifth Circuit referred to debtors' counsel filing false claims an attempt to preclude appropriate adjudication as " ... a serious potential for abuse ..." [48]

In an unpublished decision in *Henry Lubaczewski* case number 98–19398, United States Bankruptcy Court, District of New Jersey, debtor's counsel listed a $404,000 claim at "zero" and a $300,000 claim at "zero" because he did not want to "highlight" the claims and did not want to call them to the attention of the trustee. There were other discrepancies in the bankruptcy schedules. Bankruptcy Judge Burns sanctioned counsel with a reprimand and referred the matter to the New Jersey Disciplinary Review Board for ethics discipline. In a currently unpublished opinion in docket # DRB 05–278, Supreme Court of New Jersey, the New Jersey Disciplinary Review Board voted 5 to 2 to discipline counsel with a written censure. (The two dissenting members of the board would have imposed more severe discipline.) The matter is pending before the New Jersey Supreme Court. [49] Judge

---

**45.** Opinion of Judge Lake, Civil Action # 99–2278, also filed as docket # 71, bankruptcy case # 98–42443, page 9.

**46.** *Id.* pages 11—12.

**47.** *In re Kolstad,* 928 F.2d 171 (5th Cir.1991).

**48.** *Id.* at 174.

**49.** The case has had some notoriety in the press. *The New Jersey Law Journal,* Law.com, and the American Bankruptcy Institute have published reports. *The New Jersey Law Jour-*

Burns gave a very articulate and well-reasoned explanation for her sanctions. (She did not provide written reasons, but ruled from the bench). Beginning at page 30 of the transcript:

> The point is disclosure. If you know you can deal with it, why not disclose it? ... It's not an admission that you give up your rights to it. You disclose it. You explain it. You deal with it. But you chose, instead, on behalf of your client to hide it. You were hiding it from the Trustee, the creditors and the Court ...
>
> You are an officer of the Court. You have an obligation under the Rules of Professional Conduct to disclose to the Tribunal a material fact with knowledge that the Tribunal may tend to be misled by such failure. That's RPC 3.3.[50] It's also professional misconduct for a lawyer to engage in any context involving dishonesty, fraud, deceit or misrepresentation or to engage in conduct that is prejudicial to the administration of justice, RPC 8.4.[51]
>
> These are your obligations of (sic) an attorney. You have an obligation to the Court, even ahead of your obligation to your client if what you're going to do for your client is deceitful or untruthful and I find, what's the most distressing about all of this, if I thought you were incompetent, if I thought you made mistakes, if I didn't think you were capable of this, then I wouldn't take it as seriously. And I agonized over this, too because there is nothing that the Court likes less

then (sic) to have to deal with an attorneys (sic) unprofessional conduct before the Court. [ending on page 31 of the transcript.]

Then Judge Burns summarizes the related jurisprudence. Set out below are the cases and quotations that Judge Burns read into the record:

> The duty of reasonable inquiry imposed upon an attorney requires the attorney (1) to explain the requirement of full, complete, accurate, and honest disclosure of all information required of a debtor; (2) to ask probing and pertinent questions designed to elicit full, complete, accurate, and honest disclosure of all information required of a debtor; (3) to check the debtor's responses in the petition and Schedules to assure they are internally and externally consistent; (4) to demand of the debtor full, complete, accurate, and honest disclosure of all information required before the attorney signs and files the petition; and (5) to seek relief from the court in the event that the attorney learns that he or she may have been misled by a debtor ... (*In re Robinson*, 198 B.R. 1017 (Bankr.N.D.Ga.1996)).
>
> When one or more attorneys allow one or more clients to abuse the system, the harm which devolves is not limited to the affected creditors. By example and word of mouth, the "technique" spreads until it is no longer perceived by the Bar and by debtors as an abuse but as a permissible manipulation of the system. In the meantime, respect for the bank-

---

*nal* lead sentence reads: "The ethics prosecution of one of New Jersey's busiest bankruptcy lawyers, Eric Clayman, raises the question of whether it's common practice—or used to be—for bankruptcy lawyers to be less than candid in Chapter 13 petitions."

**50.** The Texas Disciplinary Rules of Professional Conduct, Rule 3.03 Candor Toward the Tribunal is similar in substance to New Jersey Rule of Professional Conduct, Rule 3.3(a).

**51.** The Texas Disciplinary Rules of Professional Conduct, Rule 8.04 Misconduct, is also similar in substance to New Jersey Rule of Professional Conduct, Rule 8.4.

ruptcy system, including attorneys who wish to assist honest debtors, deteriorates. When public respect for any part of the legal system falters, it harms everyone involved in the system, which must rely on honest participation. (*In re Armwood,* 175 B.R. 779 (Bankr. N.D.Ga.1994)).

This Court could not state the rule better, nor provide better authority than Judge Burns gave orally from the bench. Therefore, this Court adopts her analysis and conclusion.[52]

In this case, not only did Counsel prepare and file the petition and related List of Creditors, he conceived the method of "averaging" the actual IRS claim with the amount shown on the Debtors' tax return to produce an artificial figure of $20,000; he prepared and filed the false schedules; he prepared and filed the chapter 13 plan that is unwarranted based on known facts and law; and he prepared and filed a false proof of claim. Counsel's argument that he did so with the expectation that the false schedules would be overlooked is unavailing.

4. *Counsel's Duty of Candor to the Court Overrides Counsel's Duty of Vigorous Advocacy*

■ Counsel contends that litigation and bankruptcy are adversary processes, that Counsel is duty bound to take whatever position most benefits his client in litigation, and that Counsel is entitled to a default judgment or order binding adverse parties, even if the judgment or order is based on false information, unless the adverse party files a timely answer or response.

Local Rules of the United States District Court for the Southern District of Texas apply to practice before the bankruptcy court.[53] The district court rules provide that the Texas Disciplinary Rules of Professional Conduct apply.[54] Rule 3.01 of those rules provides that:

A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless the lawyer reasonably believes that there is a basis for doing so that is not frivolous.

In Schuwerk and Hardwick, *Handbook of Texas Lawyer and Judicial Ethics,* Thompson, 2004, § 8.01, (hereafter "Schuwerk") is the following comment:

This Rule recognizes that while a lawyer has a duty to represent a client vigorously and, to that end, to employ available legal procedures and remedies to the full extent authorized by law, he nonetheless has a duty not to abuse the legal process.

While the dimensions of this standard cannot be set out precisely, some basic principles are clear. First, this Rule prohibits the filing of all pleadings, motions or other papers known by the lawyer to be false in some material respect, or otherwise meritless as a matter of fact or law...Courts in other jurisdictions have consistently imposed severe discipline on lawyers for knowingly asserting false claims or defenses...Rule

---

**52.** The Fifth Circuit has emphasized the need for accuracy and integrity in bankruptcy schedules and pleadings. (*In re Superior Crewboats,* 374 F.3d 330 (5th Cir.2004) and *In re Coastal Plains, Inc.,* 179 F.3d 197 (5th Cir.1999)).

**53.** Bankruptcy Local Rule 1001(b).

**54.** District Local Rule 83.1L provides that the Rules of Discipline in Appendix A, which is attached to the local rules, govern attorney conduct in the Southern District of Texas. Rule 1A of Appendix A provides that the minimum standard of practice in the Southern District of Texas shall be the Texas Disciplinary Rules of Professional Conduct.

3.01 continues that intolerance of dishonest or frivolous conduct. [Footnotes omitted.]

Rule 3.03 of the Texas Disciplinary Rules of Professional Conduct provides:

Rule 3.03 Candor Toward the Tribunal

(a) A lawyer shall not knowingly:

(1) make a false statement of material fact or law to a tribunal.... ·

(3) in an ex parte proceeding, fail to disclose to the tribunal an unprivileged fact which the lawyer reasonably believes should be know by that entity for it to make an informed decision...

(5) offer or use evidence that the lawyer knows to be false.

Schuwerk states in § 8.03:

This Rule requires that a lawyer's duty to vigorously pursue a client's interests "must be met in conjunction with, rather than in opposition to, other professional obligations." Where a lawyer's duty to a client conflicts with his obligations as an officer of the court to further the administration of justice, the private duty must yield to the public obligation. The most fundamental limitation on the lawyer's duty to a client is to be truthful in his statements to a tribunal. "When an attorney adds or allows false testimony, ... he ... makes it impossible for the scales [of justice] to balance ... No breach of ethics, or of the law, is more harmful to the administration of justice ..." Consequently, the lawyer has a duty under Rule 3.03 not to make a false statement of material fact or law to a tribunal. Materiality in the context of Rule 3.03(a)(1) "encompasses matters represented to a tribunal that the judge would attach importance to and would be induced to act on in making a ruling" ...'. Moreover, in an *ex parte* proceeding, a lawyer has the expanded duty to inform the court of all unprivileged facts known to the lawyer, even those adverse to the client's position, which the lawyer reasonably believes the tribunal must know in order to make an informed decision.

As the Rule's comments suggest, an advocate need not have personal knowledge of factual matters asserted in pleadings or other documents prepared for litigation. But an assertion purporting to be on the lawyer's own knowledge, such as an affidavit of the lawyer or a representation of fact in open court, may properly be made only when the lawyer knows the assertion is true. or believes it to be true on the basis of a reasonably diligent inquiry. [Footnotes omitted.]

Counsel in this case presented to the Court schedules, chapter 13 summaries and plans, and a proof of claim that Counsel knew to be false and to have no basis in fact.

## SEPARATE ORDER ISSUED THIS DATE

By separate order issued this date, the order confirming the chapter 13 plan is vacated. The Bankruptcy Code provides procedures for further proceedings if a confirmation order is revoked under Bankruptcy Code § 1330. The Court will borrow from those procedures for further disposition of this case. The chapter 13 trustee is directed to terminate distributions under the plan. Debtors are allowed 30 days from the date of this order to file an amended plan if they care to do so. The chapter 13 trustee is directed to give notice that Judge Isgur will hold a hearing on the new plan, if one is filed, with the hearing to be held on an appropriate date on Judge Isgur's schedule in April, 2006.[55] The notice should further state

55. Judge Isgur's chapter 7 draw of cases and

Judge Steen's chapter 13 cases have been

that Judge Isgur may consider disposition of the case under Bankruptcy Code § 1307 if a new plan is not confirmed.

 Because Counsel has prepared, signed, and filed a false petition, an improper chapter 13 plan summary and chapter 13 plan, an objection to claim and related memoranda without factual or legal basis, and a proof of claim and has advocated all of those for improper purpose and knowing that they were factually incorrect, the Court concludes that Counsel has violated FRBP 9011(b). The Court gave Counsel notice and an opportunity to be heard on more than one occasion, specifically setting forth the issues the Court would inquire into.[56] Sanctions are appropriate. FRBP 9011(c)(2) provides that sanctions "... shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated." By separate order issued this date, Counsel is ordered to identify a law professor at a Texas law school who teaches legal ethics. Counsel must arrange for private tutoring from that professor in legal ethics and the Texas Disciplinary Rules of Professional Conduct. Because Counsel refused in open court on November 1 (despite twice being asked by the Court) to recognize a duty of candor to the Court, the tutoring should focus on an attorney's duty of candor and honesty in dealings with the courts. The tutoring shall consist of not less than 10 hours of instruction including such exercises or written papers as the tutor may think appropriate. Counsel's arrangement must include provision for payment of the tutor's fee in advance. Prior to commencement of the tutoring, Counsel must present to the Court a written proposal including the name and qualifications of the tutor, a proposed syllabus, and the written statement of the tutor that he or she has read this opinion and will undertake the engagement. (After consultation with Judge Isgur, the undersigned judge will retain jurisdiction of enforcement of this sanction, notwithstanding the transfer of this case to Judge Isgur.) Arrangements must be made and submitted to the Court on or before April 30, 2006. Tutoring must be complete before June 30, 2006.

18 USC § 157 provides that making a false or fraudulent representation or claim in relation to a bankruptcy case is a federal crime. 18 USC § 3057 requires any judge who has "reasonable grounds for believing that any violation under chapter 9 of this title [18 USC §§ 151 *et seq*] ..." to report the details to the appropriate United States Attorney. Therefore the Court will forward this memorandum opinion to the United States Attorney for appropriate consideration.

Canon 3(B)(3) of the Code of Conduct for United States Judges provides that "A judge should initiate appropriate action when the judge becomes aware of reliable evidence indicating the likelihood of unprofessional conduct by a judge or lawyer." Therefore, the Court will forward a copy of this opinion to the Chief District Judge of this district and to the State Bar of Texas for appropriate consideration.

---

redistributed under the Court's work order for reasons unrelated to this case. Judge Isgur has been consulted and agrees to the allocation of duties in this case as provided herein.

**56.** Docket ##'s 68, 69 and 78.